[No. 39492.    Department One.    May 29, 1969.]

YAKIMA VALLEY CANAL COMPANY, *Appellant,* v. WILLIAM
WALKER *et al., Respondents.**

*Donald H. Bond* (of *Halverson, Applegate, McDonald &
Weeks*), for appellant.

*Velikanje, Moore & Countryman,* by *E. F. Velikanje,* for
respondents.

WEAVER, J.—Plaintiff, a Washington corporation engaged
in the operation and maintenance of an irrigation canal in
Yakima County, brings this action to enjoin defendants
from encroaching upon its claimed right of way, from re-
moving dirt therefrom, and from maintaining certain im-
provements hereafter described. The trial court denied the
injunction; plaintiff appeals.

March 25, 1891, the United States issued a patent to
William T. Wilson for the

> NorthEast quarter of Section Twenty two in Township
> thirteen North of Range eighteen East of Willamette Me-
> ridian in Washington [Yakima County].

Mr. Wilson had died intestate in Yakima County, June
13, 1890, survived by his widow, Ada Wilson, the adminis-
tratrix of his estate, and five minor children. The estate
was not closed until February 13, 1899, at which time title

*Reported in 455 P.2d 372.

to an undivided one-half interest in the real property heretofore described was confirmed in Ada Wilson, and one-half in the minor children.

August 7, 1894, Ada Wilson, covenanting that she was seized of an undivided one-half interest in the real property described, conveyed to plaintiff, the Yakima Valley Canal Company, a corporation,

a Right of Way in, upon, along, over and through . . . [the real property described] *to the extent of fifty (50)* feet on each side of the following described line, to-wit: — That certain line surveyed by Alfred Bannister in July A.D. 1894, as and for the center line of a canal to be constructed by said Yakima Valley Canal Company. [Italics ours.]

There is no evidence that the children of Mr. Wilson, or their successors in interest, ever gave a similar conveyance.

Mr. Bannister's 1894 survey field notes were available prior to trial. Remie Noel Jaussaud, a registered professional land surveyor, reconstructed the canal center line of the Bannister survey and then superimposed the center line of the canal as it was actually built and now exists. Mr. Jaussaud testified that the center lines "crossed in places and paralleled in places."

We place little importance upon the slight discrepancies disclosed by the two surveys, for Mr. Jaussaud further testified that he did not know if he used the same monument to start the survey as that used by the original surveyor.

The trial court's finding of fact is unchallenged

That in 1895, the plaintiff, *acting under a claim of right,* established a canal generally along the line of a survey made in July of 1894 by one Alfred Bannister. That since 1895, said plaintiff, under a claim of right, has used said canal within its present location for the transportation of water and for maintenance operations and has also made use of the canal banks for the operation and maintenance of its canal and for the disposition of soil and silt removed from said canal. *That said use has been open, continuous and notorious, and such use would constitute a prescriptive right to establish a right to use same for such purpose.* [Italics ours.]

Defendants acquired title to their property, which is on the downhill side of the eastern bank or dike of the canal, by *warranty* deed dated February 22, 1965, from Mr. and Mrs. Huff. The description of the property conveyed is significant. Defendants' western property line next to the canal right of way is warranted and described as being 50 feet distant from the center line of the canal. This, of course, referred to the center line of the canal as built—not to the 1894 Bannister survey. The description corresponds to the description in the deed by which the Huffs acquired title from Mr. and Mrs. J. M. Thome in 1964.

In addition, the deed from Huffs to defendants quitclaims any interest grantors might have to that portion of the real property

> lying between the west boundary line of the above described property and the center line of the Yakima Valley Canal Company's canal.

The Thomes' conveyance to the Huffs does not contain this provision. After trial, however, but before final disposition of the case, Mr. and Mrs. Thome quitclaimed the disputed area to defendants.

The eave of defendants' house is approximately 50 feet from the center line of the canal; the house itself, about 52 feet. To the west of the house, defendants have built a patio, enclosed it with a fence, and paved a portion of the ground in order to park a large trailer or mobile home. The area is approximately 15 feet wide.

It is apparent from the many excellent photographs and drawings in evidence that defendants dug a ditch, laid pipe, dug post holes, and set posts for the high fence. The area excavated from the toe of the slope[1] of the canal wall or dike was 120 feet long, varied in depth from 18 inches at the southeast end of the cut to approximately 6 inches near the center of defendants' house, and tapered to nothing at a point beyond the edge of the house. Laterally, approximately 3 feet of the toe of the slope was removed. If, as

---

[1] The place where the slope of the bank or dike joins the natural level of the ground beyond.

plaintiff contends, it has an easement extending 50 feet on a horizontal from the center line of the canal as constructed, then defendants have encroached on its right of way.

In the final analysis, the question presented on this appeal is a narrow one. What is the lateral extent of plaintiff's easement?

Plaintiff's 1894 deed from Mrs. Wilson conveyed to it only an undivided one-half interest in an easement for the canal and its banks. The court found that plaintiff had established its canal and the banks for its maintenance "open, continuous, and notorious," for 74 years, a period sufficient to "constitute a prescriptive right to use same for such purpose."

The trial court found, however, that by reason of maintenance work and the annual removal of silt from the canal, the toe of the bank had moved outward from the canal center line towards defendants' house about 3 feet in the last 10 years. In short, the trial court held that plaintiff's prescriptive easement did not extend to the area in dispute because it had not used the area for the requisite period to establish its right. We do not agree.

■■ It is abundantly apparent that plaintiff claims its 50-foot easement on both sides of the canal center line *under color of title.* Even though the conveyance be defective or void, the true owner will be deemed disseized to the extent of the boundaries stated in the conveyance by the adverse claimant's possession of a part of the premises.

The rule is well stated in 3 Am. Jur. 2d *Adverse Possession* § 27, at 109:

> It is the general rule that where property is held under color of title possession of the entire property is not required for purposes of adverse possession. Correlatively, it is a well-settled general rule that one who enters upon land under color of title, such as a deed, and possesses only a part of the land, will be deemed to have possession of the entire tract to the limits of the boundaries described in the color of title for purposes of adverse possession, . . . . The constructive seisin in deed is the equivalent of actual seisin.

There is a marked distinction between the extent of an easement acquired under a claim of right and the scope of one acquired under color of title. When one seeks to acquire an easement by prescription under a claim of right, user and possession govern the extent of the easement acquired. It is established only to the extent necessary to accomplish the purpose for which the easement is claimed. *Northwest Cities Gas Co. v. Western Fuel Co.,* 17 Wn.2d 482, 135 P.2d 867 (1943).

On the other hand, however, where one's occupancy or adverse user is under color of title that is a matter of public record, possession or user of a portion is regarded as coextensive with the entire tract described in the instrument under which possession is claimed. *Omaha & Republican Valley R. v. Rickards,* 38 Neb. 847, 57 N.W. 739 (1894).

We conclude that plaintiff has established its right by prescription, under color of title, to an easement extending 50 feet on each side of the center line of its canal.

In his first memorandum opinion, the trial judge said:

> In the case at bar, there is invasion of plaintiff's ditch bank. The weakening of the ditch bank is actual and not theoretical.

The downhill bank of the canal is most critical. A breach, caused by percolation, rodent burrowing, or rotting root systems, could cause extensive flooding. To guard against this, the canal company maintains a constant surveillance of the canal banks, particularly the outer edge or toe of the bank where signs of percolation or seepage will first be detected. Weakening the toe of the bank causes a reduction of lateral support and increases the danger of seepage. By construction of the fence defendants have made this inspection impossible.

The case is reversed and remanded with directions to enter an injunction directing defendants to remove their improvements from plaintiff's right of way.

It is so ordered.

FINLEY, HALE, and NEILL, JJ., and OTT, J. Pro Tem., concur.