[No. 38115-6-I. Division One. September 2, 1997.]

FRANCES LEE, ET AL., *Respondents*, v. JON LOZIER, ET AL., *Appellants*.

*David J. Lawyer* of *Inslee, Best, Doezie & Ryder, P.S.*, for appellants.

*G. Michael Zeno, Jr.*, of *Davidson, Czeisler, Kilpatric & Zeno, P.S.*, for respondents.

KENNEDY, J. — Jon Lozier and Patricia Lochwood (collectively, Lozier) appeal the trial court's grant of a prescriptive easement to several of their neighbors in portions of a community dock lying within Lozier's property line. Lozier contends that the trial court erred in finding that the neighbors' use of the dock was adverse and continuous. They also contend that the easement granted by the court was overly broad. We affirm.

## FACTS

Fogleman's Lake Washington Tracts is an 11-lot subdivision on the banks of Lake Washington. Lots 7 through 11

of the development border the lake; Lots 1 through 6 are inland lots. Lot 9 is a community beach lot, of which each lot owner holds an undivided one-tenth interest. The respondents in this case are the owners of the inland lots, Lots 1-6, and will be hereinafter referred to as "the neighbors."

In 1981, the neighbors equally divided the cost of building a community dock extending into the lake from the shore of Lot 9 with William Fogleman, who owned and lived on Lot 10, which borders Lot 9 to the south. As constructed, the dock generally follows the border dividing Lots 9 and 10 and widens at its end into an 80-foot long "T"-shaped water-ski pier. Approximately one foot of the width of the dock stem, and half of the width of the water-ski pier, lie within Lot 10; the remainder of the dock lies entirely within Lot 9. The dock has five moorage slips: three community slips that lie within Lot 9, and two that lie within Lot 10 to be used exclusively by the owner of Lot 10.

At the time the dock was built, Fogleman agreed to allow the neighbors to use the portions of the dock that extend onto Lot 10, apart from the two moorage slips. Minutes of a March 1981 homeowners meeting between the neighbors and Fogleman state that "Bill Fogleman agreed to give [the neighbors] a letter that he [would] never deny lot owners access to the water ski pier that crosses his property line." According to the meeting minutes, Fogleman stated that "as soon as the dock was completed, [the letter] w[ould] appear . . . on [Lot 10's] title[.]" *Id.* Fogleman never recorded an easement against the title to Lot 10.

In the years following the completion of the dock, the neighbors used it for various activities including fishing, sailing, water-skiing, strolling, picnicking, temporarily tying up boats to unload goods and passengers, and mooring boats. During the warm summer months, the neighbors also used the dock for sunbathing and swimming.

Lozier purchased Lot 10 from Fogleman in 1989 and

began extensive renovations on the home that stood on the lot. Prior to purchasing the lot, Lozier became aware of restrictive covenants and bylaws appearing on the title search. The covenants and bylaws prescribed rules for use of the community dock, but did not define "community dock" and did not differentiate between the uses made of the portions of the dock lying on Lot 9 and the portions lying on Lot 10. Lozier did not review the homeowners' association meeting minutes nor speak with any of the neighbors about the dock before purchasing the property.

Lozier took up residence on Lot 10 in 1992. From that time forward, Lozier occasionally noticed people, including the neighbors, using the Lot 10 portions of the dock. On several occasions, Lozier requested that the persons using the dock move to the Lot 9 portions of the dock. Eventually, Lozier drew a chalk line on the dock separating Lot 10 from Lot 9 and put up a "private property" sign advising others to stay off the Lot 10 portions of the dock. The neighbors confronted Lozier and insisted they were entitled to use the entire dock, including the portions lying within Lot 10. The parties were unable to come to a resolution, and the neighbors filed suit in 1994.

In their complaint, the neighbors requested an order establishing their entitlement to a prescriptive easement to use the entire dock, including the portions extending onto Lot 10. Lozier filed a counterclaim requesting a permanent injunction preventing the neighbors from entering the Lot 10 portions of the dock.

At trial, neighbors who had attended the March 1981 homeowners' association meeting with Fogleman testified that the "letter" promised by Fogleman was understood to mean an easement by which Fogleman would grant the neighbors unrestricted use of the Lot 10 portions of the dock. None of the neighbors checked the title to Lot 10 to see whether an easement was ever recorded. Instead, they testified that they relied on Fogleman's promise that he would record the easement. One neighbor testified that Fogleman, when asked, years after the homeowners' as-

sociation meeting, whether he had ever recorded the easement, stated that the easement had been "taken care of . . . a long time ago." Fogleman denied at trial that he had promised to give the neighbors a permanent right to use the Lot 10 portions of the dock or to record an easement to that effect.

The trial judge found that the neighbors had openly used the Lot 10 portions of the dock for at least 10 years; that their use began under a claim of right in a fashion adverse to Fogleman; that Fogleman was aware of the adverse use by the neighbors at a time when he could have asserted his rights but did not do so; and that the neighbors' seasonal use was "continuous" given that the "use of a dock inevitably has a seasonal character." Concluding that the neighbors had satisfied the elements necessary for a prescriptive easement to use portions of the dock stem and water-ski pier lying on Lot 10, the court entered judgment accordingly.

Lozier appeals.

## DISCUSSION

### I

██ To establish a prescriptive easement, a claimant must prove: (1) use adverse to the title owner; (2) open, notorious, continuous and uninterrupted use for 10 years; and (3) that the owner knew of the adverse use when he was able to enforce his rights. *Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 693, 709 P.2d 782 (1985) (citing *Dunbar v. Heinrich*, 95 Wn.2d 20, 22, 622 P.2d 812 (1980)). Whether the elements of a prescriptive easement are met is a mixed question of fact and law. *Petersen v. Port of Seattle*, 94 Wn.2d 479, 485, 618 P.2d 67 (1980). A trial court's factual findings will be upheld if supported by the record; the court's conclusion that the facts, as found, constitute a prescriptive easement is reviewed for errors of law. *Stokes v. Kummer*, 85 Wn. App. 682, 689-90, 936 P.2d 4 (1997).

██ Lozier first contends that the trial court erred in

ruling that the neighbors' use of the Lot 10 portions of the dock was adverse. Possession is adverse if a claimant uses property as if it were his own, entirely disregards the claims of others, asks permission from nobody, and uses the property under a claim of right. *Crescent Harbor Water Co., Inc. v. Lyseng*, 51 Wn. App. 337, 341, 753 P.2d 555 (1988) (quoting *Malnati v. Ramstead*, 50 Wn.2d 105, 108, 309 P.2d 754 (1957)). Use of property is rebuttably presumed to be permissive. *Petersen*, 94 Wn.2d at 486. Permissive use is not adverse and does not commence the running of the prescriptive period. *Washburn v. Esser*, 9 Wn. App. 169, 171, 511 P.2d 1387 (1973).

Lozier contends that the neighbors' use of the dock could not have been "hostile and adverse" because it was a permissive use granted by Fogleman as a neighborly courtesy. Lozier argues that because Fogleman did not revoke his permission until 1988,[1] no "adverse and hostile" use took place until that time. Lozier also contends that a prescriptive easement cannot be established where the claimants thought they held an express easement.

■ Contrary to Lozier's contention, claimants who were granted permission to use land or who believe that they hold an express easement are not automatically precluded from claiming that they are entitled to a prescriptive easement. "The important question is whether the landowner permitted the use as a mere revocable license or whether an oral grant of a permanent right to use the property was intended." *Washburn*, 9 Wn. App. at 172. As was stated in *Washburn*:

> It is generally agreed that use of an easement under claim of right by virtue of an oral grant may be adverse so as to give a title by prescription, although the parol grant itself is void under the statute of frauds. If the use of the easement

[1]Lozier contends that Fogleman rescinded all agreements he had with the neighbors with regard to Lot 9 in a 1988 letter. Lozier failed to designate that letter for the appellate record, however. Accordingly, we can consider only the record that we have before us: the testimony of neighbor Trish Brown and of Fogleman that the 1988 letter did not relate in any way to the neighbors' use of the Lot 10 portions of the dock.

acquired by the oral grant continues for the prescriptive period of 10 years in a manner that is open, notorious, continuous and adverse to the owner of the land, the oral grant then ripens into a prescriptive easement[.]

*Id.* at 172 (citations omitted). Thus, even if Fogleman granted permission to the neighbors to use the Lot 10 portions of the dock, their use will still be "adverse" as long as they can demonstrate that they were operating under an oral grant of a permanent right to use the dock and not a temporary, revocable license to do so. We are satisfied that they have met this burden.

It is undisputed that the neighbors never acquired a legal right to enter on Lot 10 because no easement was ever actually filed against that property. However, Fogleman's promise of filing a "letter" against his title indicated an intent to grant a permanent, irrevocable right to the neighbors to use the dock as if it were their own. The neighbors operated under that assumption for more than 10 years, an assumption which for at least one neighbor was reinforced by Fogleman's express assurance that the easement had been "taken care of." "When the owner of a servient estate confers upon another the right to use that property as if it had been legally conveyed, the resultant use is made under a claim of right, rather than by permission." *Crescent Harbor,* 51 Wn. App. at 342 (citations omitted).

The *Washburn* court noted that the presence of consideration is helpful in determining whether the property owner intended to grant a permanent right or merely a revocable license to use the property. *Washburn,* 9 Wn. App. at 172-73. In *Washburn,* consideration was established where the four property owners shared the costs of constructing and repairing a road that crossed each of their lots. *Id.* at 173. Here, as in *Washburn,* the neighbors divided the cost of constructing the dock evenly among themselves and Fogleman. In addition, here, as in *Washburn,* the neighbors' expenditures were for the purpose of improving the dock to make it accessible to all the parties.

Contrary to Lozier's contention, the neighbors' belief that they could use the entire dock was not dependent on Fogleman's permission; they believed they were entitled to do so because the dock was a community dock, paid for equally by themselves and Fogleman.[2] Given the consideration paid, we are satisfied that the neighbors were operating under a permanent right to use the Lot 10 portions of the dock when they did so during the prescriptive period.

The cases cited by Lozier are not to the contrary.[3] None of those cases involved the ineffective oral grant of a right to use property, which is the issue in this case and which was specifically addressed in *Washburn*. Nor are Lozier's attempts to distinguish *Washburn* persuasive. Contrary to Lozier's contention, *Washburn* does not require that the permanent right to use property be silently implied. Indeed, the *Washburn* court explicitly observed that an *oral* grant of a use as a matter of right may be adverse in nature even though such a grant is void under the statute of frauds. *See Washburn*, 9 Wn. App. at 172 ("It is generally agreed that use of an easement under claim of right by virtue of an oral grant may be adverse so as to give a title by prescription, *although the parol grant itself is void under the statute of frauds*") (emphasis added). In addition, nowhere did the *Washburn* court rest its holding on any element of necessity or mutuality, as Lozier implies.

---

[2]The neighbors' subjective beliefs regarding the specifics of their arrangement with Fogleman are irrelevant in any event — it is only important that uses they made of the dock were inconsistent with Fogelman's rights:

> The "hostility/claim of right" element of adverse possession requires only that the claimant treat the land as his own as against the world throughout the statutory period. The nature of his possession will be determined solely on the basis of the manner in which he treats the property. His subjective belief regarding his true interest in the land and his intent to dispossess or not dispossess another is irrelevant to this determination.

*Chaplin v. Sanders*, 100 Wn.2d 853, 860-61, 676 P.2d 431 (1984) (citations omitted).

[3]*See, e.g., Millard v. Granger*, 46 Wn.2d 163, 279 P.2d 438 (1955); *Roediger v. Cullen*, 26 Wn.2d 690, 175 P.2d 669 (1946); *Crites v. Koch*, 49 Wn. App. 171, 741 P.2d 1005 (1987); *Granston v. Callahan*, 52 Wn. App. 288, 759 P.2d 462 (1988); *Ormiston v. Boast*, 68 Wn.2d 548, 413 P.2d 969 (1966).

The trial court was correct in holding that the neighbors' use of the property was adverse.

## II

Lozier contends that the trial court erred in finding that the neighbors' use of the Lot 10 portions of the dock during the prescriptive period was continuous and uninterrupted. Lozier argues that because the neighbors' uses of the dock were sporadic and seasonal, taking place mostly during the summer months and on the weekends, the uses were not continuous or uninterrupted. Lozier correctly contends that each of the neighbors bore the burden of establishing by clear proof that they or their predecessors in interest used the Lot 10 portions of the dock continuously and in an uninterrupted fashion for at least 10 years. *See Howard v. Kunto*, 3 Wn. App. 393, 398, 477 P.2d 210 (1970) (overruled on other grounds by *Chaplin*, 100 Wn.2d at 862). "Continuous and uninterrupted use" does not, however, require the neighbors to prove constant use of the dock. Instead, "the claimant need only demonstrate use of the same character that a true owner might make of the property considering its nature and location." *Double L. Properties, Inc. v. Crandall*, 51 Wn. App. 149, 158, 751 P.2d 1208 (1988) (citation omitted); *Howard*, 3 Wn. App. at 398 (continuous possession is established where the claimant uses the property in the way that an owner of property of like nature and condition would hold, manage, and care for the property). Thus, in *Howard*, occupancy only during the summer months of a beach home did not destroy the continuity of the claimants' use, where the surrounding homes were also used as summer recreational retreats. *Howard*, 3 Wn. App. at 398. *See also Reymore v. Tharp*, 16 Wn. App. 150, 153, 553 P.2d 456 (1976) (same).

The testimony at trial established not that that the neighbors used the dock only during the summer, but that they used it more frequently in the summer than any other time of year. The nature of the dock's use was

recreational: it was used for typical recreational activities. Lozier presented no evidence to indicate that the neighbors' use of the dock — more in the summertime, less in the wintertime — was inconsistent with the uses made by other owners of similarly-situated docks. Given the water and air temperatures in the wintertime on Lake Washington, we can conclude only that use of the dock more frequently in summer than winter was entirely consistent with the uses most likely made of similar docks.

Lozier also contends that the neighbors failed to prove continuous use because some of the neighbors did not, in their testimony, differentiate between their uses of the Lot 9 and Lot 10 portions of the dock, in terms of quantification. We reject this contention. Lozier cites no authority for the proposition that such an accounting was required, and we know of none. Extensive testimony established that each of the six lot owners or their predecessors used both the Lot 9 *and* the Lot 10 portions of the dock, year after year, for at least 10 years. That testimony demonstrated that the neighbors or their predecessors in interest used the entire dock from the time it was built. Contrary to Lozier's contention, the fact that the neighbors did not heed the invisible line dividing Lot 9 from Lot 10 does not detract from but instead supports the neighbors' case, because it indicates that they viewed the dock as an undivided whole and used it as such. We hold that the neighbors produced sufficient evidence to support the trial court's finding of continuous and uninterrupted use of the entire dock, including those portions lying within Lot 10.

### III

Lozier contends that the prescriptive easement granted by the trial court was overly broad because it allowed all of the neighbors to engage in "recreational uses" of the dock even though not all of the neighbors testified that they had engaged in all types of recreational uses in the past. The order provided:

The recreational uses permitted under this easement shall include, without limitation, waterskiing, swimming, fishing, strolling, sunbathing, picnicking, and the temporary moorage of boats as permitted by the covenants and bylaws of the Homeowners' Association on the outer (western) portion of the "T-shaped" end of the dock.

Clerk's Papers at 74. The extent of the rights acquired through prescriptive use is determined by the uses through which the right originated. *Northwest Cities Gas Co. v. Western Fuel Co.*, 17 Wn.2d 482, 486, 135 P.2d 867 (1943); RESTATEMENT OF PROPERTY § 477, at 2992 (1944). The easement acquired extends only to the uses necessary to accomplish the purpose for which the easement was claimed. *Yakima Valley Canal Co. v. Walker*, 76 Wn.2d 90, 94, 455 P.2d 372 (1969).

 ██ The "purpose" for which the easement was claimed by the neighbors was that of recreation. Lozier cites no authority for the proposition that an easement must be specifically limited to the individual activities that each of the claimants proved they engaged in in the past, and we know of none. Instead, as stated in the *Yakima Valley* case, the easement extends to uses necessary to achieve the *purpose* of the easement. The untenability of Lozier's position is recognized by the RESTATEMENT:

No use can be justified under a prescriptive easement unless it can fairly be regarded as within the range of the privileges asserted by the adverse user and acquiesced in by the owner of the servient tenement. Yet, no use can ever be exactly duplicated. If any practically useful easement is ever to arise by prescription, the use permitted under it must vary in some degree from the use by which it was created. *Hence, the use under which a prescriptive interest arises determines the general outlines rather than the minute details of the interest.*

RESTATEMENT OF PROPERTY § 477 cmt. b, at 2992 (emphasis added). In ascertaining whether a particular use is permissible under a prescriptive easement the court

should compare that use with the uses leading to the prescriptive easement in regard to: (a) their physical character, (b) their purpose, and (c) the relative burden caused by them upon the servient tenement. RESTATEMENT, § 478 at 2994. Here, the physical character of the uses that led to the creation of the prescriptive easement in this case is very similar to the character of the uses permitted by the trial court's order: all are activities that take place on a dock. The purpose of the uses is the same: recreation. Lozier has not contended that the prescriptive easement granted will lead to increased or overburdening use of the dock. Such a contention would not be reasonable in the circumstances of this case, because the easement as ordered by the court granted no more rights than the neighbors believed they already enjoyed. We hold that the specific recreational activities set out in the trial court's order are consistent with the "general outlines" of the activity that led to the prescriptive easement, and do not exceed its scope.

The decision of the trial court is affirmed.

BAKER, C.J., and Cox, J., concur.