# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MARK S. PELOQUIN and JENNIFER W. PELOQUIN, husband and wife, | ) ) ) | No. 68035-8-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | |
| | ) | UNPUBLISHED OPINION |
| REGINALD SORDENSTONE and CAROL SORDENSTONE, husband and wife, | ) ) ) ) | |
| | ) | |
| Respondents. | ) | FILED: May 13, 2013 |

SPEARMAN, A.C.J. — This case is about a disputed area of a driveway that is the

sole access to property owned by the Sordenstones. After a bench trial, the trial court

found that the Sordenstones' neighbors, the Peloquins, had a prescriptive easement for

ingress and egress over the disputed area of the driveway, but that the easement was

for very limited, personal use, as opposed to commercial use. Because the record

contains substantial evidence supporting the trial court's findings of fact, and those

findings in turn support the court's conclusions of law, we affirm.

## FACTS

Reginald and Carol Sordenstone purchased a parcel of property on Vashon

Island in May 2009. Finding of fact (FOF) 3. The Sordenstones' property is accessed

solely by a long driveway leading back from Southwest (SW) 116th Street. The first 160

feet of the their driveway is approximately 30 feet wide, and is bordered on the west by a nature preserve, and on the east by the boundary of the property owned by Mark and Jennifer Peloquin. The 30 foot by 160 foot section of the Sordenstones' driveway (the "disputed area") is the area at issue in this case.

The Peloquins' property is located directly to the east of the Sordenstone property, facing SW 116th Street. The Peloquins have access to their property, including their own garage and their own driveway, directly from SW 116th Street. The Peloquins have a 1,100 square-foot shop behind their residence, which they can access by walking through their own property.

The Sordenstone and Peloquin properties used to be parts of one large parcel owned by William Fitzpatrick. In the early 1970s, Fitzpatrick subdivided the large parcel of land into four separate lots. Three of those lots border SW 116th Street. One of those three lots eventually became the Peloquins' property. The fourth lot behind the three parcels is now the Sordenstone's Property. When Fitzpatrick subdivided the properties, he left the 30 foot-wide strip of land to the west of the Peloquins' property so that the back parcel (the Sordenstones' property) would have a dedicated access to SW 116th Street.

The disputed area driveway was maintained as a means to access the Sordenstones' property. There was never a written or recorded easement for the owners of the Peloquins' property to use the disputed area. There is no evidence Fitzpatrick intended an easement for the owners of the Peloquins' property.

2

The Sordenstones purchased their property from Michael Sweeney. Sweeney's late wife had purchased the property from Fitzpatrick in 1974. Sweeney and his wife built a home on the property in 1979, and moved into the home in 1980. Sweeney lived at the home on the Sordenstones' property until 2008.

Gary Goodale purchased what would later become the Peloquins' property from Fitzpatrick in 1972. At the time, the Peloquins' property was a vacant, undeveloped lot. Id. Goodale built a home on the property as well as a shop in the back of his property. He also installed a septic system that bordered the disputed area of the Sordenstones' driveway.

Goodale sold the Peloquins' property to Steve Pearson and Marcia Cook (formerly Marcia Pearson) in February 1994. The Pearsons sold the property to Michael and Magdalena Gross in February 1999. The Grosses, in turn, sold the property to the Peloquins in December 2008.

A disagreement regarding use of the disputed area arose between the Sordenstones and the Peloquins. In November 2009, the Sordenstones began construction of a gate at the end of the driveway. The Peloquins filed suit against the Sordenstones, alleging they had (1) a prescriptive easement for ingress and egress into their property from the disputed area; (2) an easement by part performance; (3) an easement by promissory estoppel; (4) an easement by implication; and (5) a claim based on laches.

Several prior owners of the Peloquins' property testified at trial, including Gary Goodale, Marcia Cook (formerly Marcia Pearson), Michael Gross, and Magdalena Gross. The prior owner of the Sordenstones' property, Michael Sweeney, also testified. Generally speaking, the trial court found Sweeney's testimony credible and did not find the prior owners of the Peloquins' property credible.

The court ruled largely in favor of the Sordenstones. The court found the Peloquins had established a prescriptive easement, but that the easement was limited to the Peloquins' personal use, as opposed to commercial use for the shop bordering the disputed area. The court's conclusion of law regarding the scope of the easement specifies: (1) the Sordenstones' gate at the entrance of their driveway must remain unlocked; (2) the Peloquins must close their gate which opens onto the disputed area unless it is in use; (3) the Peloquins were not permitted to block or park in the disputed area; (4) the disputed area is not to be used for commercial, retail, business or public use; (5) no customers, visitors, members of the public or third-party vehicles may use the disputed area; (6) the disputed area is not to be used for delivery or pick up of products, materials or mail; (7) the disputed area is not to be used for foot traffic; and (8) there are no restrictions on emergency vehicle access over the disputed area. CP 990.

The trial court dismissed the Peloquins' laches claim and found they had not carried their burden of proof on the other claims. The Peloquins moved for reconsideration. The court granted the motion in part, and denied it in part, clarifying that its order did not require the Peloquins to maintain the fence. The Peloquins

4

appealed only the trial courts' conclusions of law regarding the prescriptive easement claim, and as such, their alternative claims are not at issue in this appeal. The Peloquins also appeal the trial court's order on reconsideration.

## DISCUSSION

Standard of Review. "When a trial court has weighed the evidence in a bench trial, appellate review is limited to determining whether substantial evidence supports its findings of fact and, if so, whether the findings support the trial court's conclusions of law." Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555, 132 P.3d 789 (2006).

Unchallenged findings of fact are verities on appeal. Keever & Associates, Inc. v. Randall, 129 Wn. App. 733, 741, 112, 119 P.3d 926 (2005). We review challenged findings to determine if they are supported by substantial evidence. Substantial evidence is that sufficient to persuade a fair minded person of the finding's truth. City of Tacoma v. William Rogers Co. Inc., 148 Wn.2d 169, 191, 60 P.3d 79 (2002). There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence. Durrah v. Wright, 115 Wn.2d 364, 369, 798 P.2d 799 (1990).

An appellate court may not substitute its evaluation of the evidence for that made by the trier of fact. Goodman v. Boeing Co., 75 Wn. App. 60, 82-83, 877 P.2d 703 (1994). "The substantial evidence standard is deferential and requires the appellate court to view all evidence and inferences in the light most favorable to the prevailing

party." Lewis v. Dep't of Licensing, 157 Wn.2d 466, 468, 139 P.3d 1078 (2006). Moreover, we defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses. Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 861, 292 P.3d 779 (2013).

In this case, the Peloquins challenge four conclusions of law: nos. 14, 15, 17, and 18. In conclusion no. 14, the trial court concluded that the evidence "proved that the historic use of the Disputed Area was for limited personal use" and that "a limited prescriptive easement was in existence and is in existence." CP at 990. Conclusion no. 15 set forth a variety of uses that fell or did not fall within the scope of the easement. Id. Conclusion no. 17 states that the scope of the easement "is for occasional and irregular personal access by personal or family vehicle[s]." CP at 991. Conclusion 18 is actually a mislabeled finding of fact.[1]

The Peloquins argue several findings of fact the trial court used to support its conclusions of law are not supported by the evidence in the record. The Peloquins also advance two arguments as to why it was error for the trial court to find the scope of the easement was limited and for personal use: (1) the court committed an error of law by considering the nature and the purpose of the use of the disputed area when setting the

---

[1] Conclusion 18 states:

> The Court notes that on at least two documented occasions, construction vehicles were allowed back over the disputed area. The Court does not find this use to be part of the prescriptive easement. The Court finds that was an accommodation and an express permissive use by Michael Sweeney, and it was outside the prescriptive easement grant.

CP at 991.

scope of the easement; and (2) the trial court's credibility determinations hinged upon a faulty premise. We reject these arguments for the reasons described below.

Scope of prescriptive easement. The Peloquins contend the trial court failed to correctly apply the law when setting the scope of the easement. "The extent of the rights acquired through prescriptive use is determined by the uses through which the right originated." Lee v. Lozier, 88 Wn. App. 176, 187, 945 P.2d 214 (1997) (citing Northwest Cities Gas Co. v. Western Fuel Co., 17 Wn.2d 482, 486, 135 P.2d 867 (1943) and RESTATEMENT OF PROPERTY § 477, at 2992 (1944)). "The easement acquired extends only to the uses necessary to accomplish the purpose for which the easement was claimed." Id. (citing Yakima Valley Canal Co. v. Walker, 76 Wn.2d 90, 94, 455 P.2d 372 (1969)).

The Peloquins argue that under Lozier, it is untenable for a court to focus on "individual activities" to assess the scope of an easement. They focus on one passage in Lozier where we cited to the RESTATEMENT OF PROPERTY: "the use under which a prescriptive interest arises determines the general outlines rather than the minute details of the interest." See Opening Brief at 28 (quoting Lozier, 88 Wn. App. at 187 and RESTATEMENT OF PROPERTY § 477 cmt. b, at 2992). In Lozier, we went on to hold that in ascertaining whether a particular use is permissible, a court "should compare that use with the uses leading to the prescriptive easement in regard to: (a) their physical character, (b) their purpose, and (c) the relative burden caused by them upon the servient tenement." Lozier, 88 Wn. App. at 188 (citing RESTATEMENT OF PROPERTY § 477

7

cmt. b, at 2994). The Peloquins argue that, contrary to Lozier, the trial court here focused on the minute details of the use, i.e., whether to use commercial or personal, as opposed to the general outlines of the use.

The Peloquins are mistaken. In Lozier, the argument made by the appellant, that the scope of the easement found by the trial court was too broad, is the opposite of what the Peloquins argue here: that the scope of the easement is too narrow. Indeed, in Lozier, the appellant argued the easement found by the trial court, an easement for "recreational uses" of a dock, was overly broad because it allowed all neighbors to use the dock, "even though not all of the neighbors testified that they had engaged in all types of recreational uses in the past." Lozier, 88 Wn. App. at 186. The appellant specified that "an easement must be specifically limited to the individual activities that each of the claimants proved they engaged in in the past[.]" Lozier, 88 Wn. App. at 187. It was in this context that we held "no use can ever be exactly duplicated" and as such, the use under which the easement arose simply determines a "general outline" for future use. Id.

Here, by contrast, the trial court found that the use of previous owners was limited to personal activities, not commercial activities. Although the Peloquins disagree with the trial court's determination and argue the prior uses were more broad, that is a question about what the evidence at trial demonstrated rather than a legal question. Lozier is thus of no help to the Peloquins.

The Peloquins also argue it was error for the trial court to limit the scope of the easement to "personal" use, in that the distinction between "personal" and "commercial" use is a "false characterization." Opening Brief at 36. The only authority cited by the Peloquins on this issue is a Department of Development and Environmental Services bulletin that they claim permits residents to operate small scale businesses in their homes. Id. at 37. They do not, however, explain why such a bulletin would preclude the trial court from determining the historical use of the disputed area was limited to personal use.

Additionally, the Peloquins contend the trial court lacked authority to include in its order that the Peloquins keep the gate leading to the disputed area closed when not in use. But a quiet title action is equitable in nature. Durrah, 115 Wn. App. at 639. In matters of equity, the trial court has broad discretion to fashion equitable relief. Blair v. Wash. State Univ., 108 Wn.2d 558, 564, 740 P.2d 1379 (1987); see also Haueter v. Rancich, 39 Wn. App. 328, 331, 693 P.2d 168 (1985) (because quiet title actions lie in equity, courts are free to fashion appropriate remedies). Moreover, trial courts sitting in equity may fashion remedies "to do substantial justice to the parties and put an end to the litigation." Esmieu v. Hsieh, 92 Wn.2d 530, 535, 598 P.2d 1369 (1979). The trial court's equity power "is inherently flexible and fact-specific." Proctor v. Huntington, 169 Wn.2d 491, 503, 238 P.3d 1117 (2010) (cert. denied, 131 S. Ct. 1700, 179 L.Ed.2d. 619 (2011)). We reject the Peloquins' arguments on this issue.

Challenged Findings of Fact. Throughout their briefing, the Peloquins take issue with the factual basis for the trial court's determination that use of the disputed area was limited to personal use. On this issue, they challenge the following nine findings of fact as not supported by the record:

29. This Court finds it persuasive that Michael Sweeney did not observe trucks or other commercial or retail traffic. The Court also finds it persuasive that Michael Sweeney would have known whether trucks or other commercial type traffic were using the Disputed Area.

. . .

37. Third, the Court finds that the credibility of the prior landowners of the Peloquin Property to be slightly troubling because unlike Michael Sweeney, some of the prior owners of the Peloquin Property do have a stake in the outcome of this proceeding. Particularly, the Grosses are potential defendants since they sold the Peloquin Property to the Peloquins.

. . .

42. Gary Goodale testified that his use of the Disputed Area was irregular as well.

. . .

56. Historic use of the Disputed Area was for limited personal use.
57. There was no foot traffic over the Disputed Area.
58. There was no commercial use of the Disputed Area.
59. The nature of the historic use of the Disputed Area was limited, infrequent personal use by personal vehicles.

. . .

62. The gate on the Peloquin Property was always closed after it was used.
67. No blocking of the disputed area occurred or was allowed. No vehicles were parked back there. No foot traffic occurred there.

CP at 983-987. The Peloquins also challenge conclusion of law 18, which is actually a mislabeled factual finding:

The Court notes that on at least two documented occasions, construction vehicles were allowed back over the Disputed Area. The Court does not find this use to be part of the prescriptive easement. The Court finds that was an accommodation and an express permissive use by Michael Sweeney, and it was outside the prescriptive easement grant.

CP at 991.

Regarding findings nos. 29 and 37, those findings are credibility determinations. Again, we defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses. Lodis, 172 Wn. App. at 861. The Peloquins nevertheless challenge those credibility determinations, arguing all of the court's credibility determinations are tainted by the court's alleged error in stating that Michael Sweeney did not have a stake in the outcome of the proceeding. We disagree that the alleged error in finding no. 39 necessarily invalidates finding no. 29. But even if we were to accept that proposition, it is of no help to the Peloquins because the court made numerous other findings, all of which are unchallenged and therefore verities,[2] that Sweeney was a credible witness and that the prior owners of the Peloquin property lacked credibility:

33. This Court does find it persuasive that Michael Sweeney could tell whether commercial use was occurring, or whether there was constant use being made of the Disputed Area.

34. The prior owners of the Peloquin Property who testified at trial include: Gary Goodale, Marcia Cook (formerly known as Marcia Pearson), Michael Gross, and Magdalena Rangel Gross. This Court finds the credibility of the prior land owners of the Peloquin Property to be slightly troubling for several reasons.

35. First, the Court finds the credibility of the prior land owners of the Peloquin Property to be slightly troubling because it is difficult to characterize oneself as dispassionate and an objective witness when one refuses to talk to the other side, and when the other side hires co-counsel to represent you at your deposition. In this case, the prior land owners of the Peloquin Property were instructed not to speak to the Sordenstones or counsel for the Sordenstones. Further,

---

[2] In their reply brief, the Peloquins belatedly attempt to challenge additional findings of fact by arguing that their challenge to finding no. 37 "also challenges FOF 26, 27, 28, 33, 38, 39, 40, 43, and a portion of FOF 60 because these findings of fact are clearly disclosed in the associated issues[.]" Reply Brief at 3. A review of their issues, however, shows no mention whatsoever of any of the other findings of fact. See Opening Brief at 6-7.

> Plaintiff paid for co-counsel to Plaintiff Mark Peloquin, attorney David Cooper, to represent the prior owners of the Peloquin Property.
>
> . . .
>
> 40. The Court finds that the prior owners of the Peloquin Property exaggerated the amount and extent to which they used the disputed area.
>
> . . .
>
> 43. Marcia Cook (formerly Marcia Pearson) testified that she used the disputed area daily, but this Court finds that was likely an exaggeration. Of all of the witnesses who testified at trial, the Court found Marcia Cook (formerly Marcia Pearson) to be the least credible witness.

CP 983-85.

Regarding finding of fact 42, the Peloquins point to portions of Gary Goodale's testimony where he described using the disputed area. But we may not substitute our evaluation of the evidence for that made by the trier of fact. Goodman, 75 Wn. at 82-83. Rather, we review the finding to see if it is supported by substantial evidence in the record. Although Goodale testified about using the disputed area, he also testified there were portions of time when he did not use it very often. This is sufficient to persuade a fair-minded person that, as the trial court found, Goodale's use of the disputed area was "irregular."

Findings of fact 57 and 67 dealt with blocking of the disputed area and the lack of foot traffic in the disputed area. These findings are supported by the testimony of Marcia Cook. Marcia Cook testified that she used the driveway for pedestrian access "[n]ot very often" and that others made such use rarely. Verbatim Report of Proceedings (VRP) (8/15/11) at 117. Cook also testified that the United Parcel Service (UPS) truck would not block the driveway, and would instead park in front of the Peloquin property and cross that property to deliver packages, so as not to upset Michael Sweeney.

Additionally, the former UPS route driver for that area, Sharon Munger, testified that she did not make deliveries to the shop on the Peloquins' property via the disputed area. Instead, she delivered and picked up packages from the Pearsons at the Pearsons' own garage facing SW 116th Street, or at the Pearsons' house facing SW 116th Street. Id. The trial court found this testimony credible. Id.

Regarding finding of fact 62, that the gate on the Peloquin Property was always closed after it was used, Mr. Peloquin himself testified that it was closed, because with a gate placed by the Sordenstones at the end of the disputed area driveway, he then had to open two gates to leave his property. Regarding the factual finding contained within conclusion no. 18, that is supported by the testimony of Michael Sweeney, who indicated he gave permission for construction vehicles to use the disputed area.

Findings nos. 56, 58, and 59 all deal with the trial court's determination that the disputed area had historically been used in a limited, infrequent fashion, for personal, and not commercial use. The Peloquins spend much of their briefing citing portions of the record that can be read as demonstrating other uses of the disputed area. But as is described above, we may not substitute our evaluation of the evidence for that made by the trier of fact, especially when much of the trial court's determination hinged upon credibility determinations. Lodis, 172 Wn. App. at 861; Goodman, 75 Wn. App. at 82-83.

In sum, we reject the Peloquins' argument that the trial court's findings are not supported by substantial evidence, as well as the argument that the court's credibility determinations were faulty.

13

Motion for Reconsideration. The Peloquins argue the trial court erred by failing to include, as part of the prescriptive easement, access from the disputed area driveway to the Peloquin property along the entire 160 foot boundary between the two areas. According to the Peloquins, the septic system along the western boundary of their property prevents them from being able to perform maintenance to their shop from their own property. In support of this argument, they cite to the testimony of Mr. Peloquin. But Mr. Peloquin testified only that the Sordenstone's gate at the end of the driveway "interferes with access right up to that retaining wall." VRP (8/16/11) at 190. The trial court heard and evaluated this testimony, along with the rest of the evidence, and rejected the Peloquins' attempt to retain access to the entire length of the disputed driveway. As is described above, the trial court's findings on this issue are supported by substantial evidence in the record. We will not substitute our evaluation of the evidence for that made by the trier of fact. Goodman, 75 Wn. App. at 82-83.

Additionally, the Peloquins cite to Clerk's Papers 831-43, which covers three declarations from general contractors and an engineer, filed in support of the Peloquins' motion for reconsideration to the trial court. The trial court, however, granted the Sordenstones' motion to strike those declarations on grounds that the testimony constituted new evidence that could have been discovered through reasonable diligence before trial. The Peloquins do not advance any argument that the motion to strike was improperly granted, and as such the declarations are not properly before this court. We reject the Peloquins' arguments on this issue.

Affirmed.

WE CONCUR:

Spearman, A.C.J.

Becker, J.