**FILED**

**FEBRUARY 7, 2023**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WILLIAM FORSMAN and MONA FORSMAN, husband and wife, | ) ) ) | No. 38583-3-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| LOIACE W. GREENE and ELAINE A. GREENE, husband and wife, | ) ) ) | |
| Appellants. | ) | |

STAAB, J. — William and Mona Forsman brought a quiet title action against their neighbors Loiace (Bud) and Elaine Greene, alleging that they were entitled to a prescriptive easement that would effectively widen the roadway used by the Forsmans to access their property. Following a bench trial, the Asotin County Superior Court found that the Forsmans had met their burden of proving all of the elements of a prescriptive easement for use of the road shoulder and expanded turnaround area. The trial court also held that recent modifications of the public road by Greene rendered the entire road subject to current fire code regulations.

No. 38583-3-III
*Forsman, et al v. Greene, et al.*

The Greenes appeal and raise three issues: (1) the evidence was insufficient to support the trial court's conclusion that the historic use of Ridgeview Drive created a prescriptive easement for use of the road wider than the 15-foot legal description, (2) the trial court erred in failing to apply a presumption of permissive use, and (3) the trial court erred in concluding that the road was subject to the 2015 International Fire Code.

We affirm.

BACKGROUND

Following a bench trial, we review the record in a light most favorable to the prevailing party to determine if substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. *Real Carriage Door Co. ex. rel. Rees v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955, *review denied*, 198 Wn.2d 1025, 497 P.3d 394 (2021). We do not reweigh the evidence or credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

"'Substantial evidence' is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise." *Price v. Kitsap Transit*, 125 Wn.2d 456, 464, 886 P.2d 556 (1994). The substantial evidence standard is highly deferential to the fact finder. *Alpha Kappa Lambda Fraternity v. Wash. State Univ.*, 152 Wn. App. 401, 418, 216 P.3d 451 (2009). "This court will uphold the trial judge's interpretation of disputed testimony when any reasonable view substantiates his findings, even though there may be other reasonable interpretations." *Ebling v. Gove's Cove, Inc.*, 34 Wn. App.

2

495, 501, 663 P.2d 132 (1983). Unchallenged findings are considered verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

In light of our limited role on appeal and the deference afforded to the trier of fact, we set forth the evidence in a light most favorable to the Forsmans as the prevailing party.

The parties in this case own homes and property located on a steep hill in Asotin County. The property was originally owned and developed by George Cunningham. The Forsmans and several other property owners in the plat access their homes by way of a gravel road called Ridgeview Drive. Ridgeview Drive runs across property owned by the Greenes. The Greenes do not dispute the existence or status of Ridgeview Drive as a public roadway. Instead, they dispute the width of the roadway and any use beyond the 15-foot legal description, including the shoulder. The Forsmans contend that the historic use of the roadway goes beyond the 15-foot description and they have an easement by prescription to use the entire surface area of the roadway.

At trial, the Forsmans produced evidence to support their claim that the property owners and the public have historically used a much wider version of Ridgeview Drive than its 15-foot legal description. The property developer, George Cunningham, testified that the road now known as Ridgeview Drive had existed in substantially the same form since at least the mid to late 1970s. In the early 1990s, in order to secure access and utilities to future building sites, Cunningham obtained an easement from the neighboring

property owner that formally recognized Ridgeview Drive. The easement described Ridgeview Drive as 15-feet wide.

Despite this description, Cunningham testified that he never measured the width of the actual roadway, but used a 15-foot description in the easement because the City of Asotin required it. In reality, Cunningham testified that the travelled portion of the roadway was more than 15-feet wide. He clarified that the travelled portion of the roadway was evident from the tire tracks and lack of vegetation: "You can tell that by the tire tracks. And there was no weeds, no nothing. It was all knocked down to where you could see traffic used it." Ex. P21 at 28.

In 1992, Cunningham recorded a "road maintenance agreement" on the property titles that used Ridgeview Drive to ensure subsequent owners would maintain the road. In 1994, Cunningham filed a "plat dedication" making Ridgeview Drive a public roadway. Despite this dedication, the property owners continued to maintain Ridgeview Drive.

In 1995, Cunningham built the residence that would eventually be purchased by the Forsmans and sold it to William Stanley. Stanley sold it to Ronald Ritz who sold it to the Forsmans in 2016. Cunningham testified that the Stanleys, the Ritzes, and the Forsmans all continuously used the "entirety" of Ridgeview Drive out to the "surface area/shoulder" to access the house and did so for a period of ten years. The public also

used the road. These owners did not have permission to use the roadway and did not hide their use.

Cunningham and his wife divorced in the late 1990's. The house they were living in was sold to the Greenes in 2004. In 2007, Greene purchased the land on which Ridgeview Drive crosses. Initially, the Greenes used Ridgeway Drive to access their home but later built an alternate access to their property.

In 2007, the Greenes had their land surveyed, and Bud Greene placed fence posts along Ridgeview Drive to mark the property boundary. In approximately 2015, Bud Greene began placing impediments such as boulders, fence posts, fence panels, and gates on the traveled portion of the roadway and shoulder.

William Forsman testified that when he and his wife purchased their property in 2016, he noticed fence posts along the shoulder of the road, but not in the traveled portion. He estimated that the road being used at that time was 20 to 25 feet wide. After Greene placed boulders and a gate across the road in 2016, Forsman testified that he could not back into his driveway or "drive out as far (width-wide) on the road as you used to be able to." Clerk's Papers (CP) at 365-66. The rock and gate placements also prevented access to utility vaults outside the road that was previously possible. Another property owner testified that after Greene installed impediments along the shoulder, it was difficult or impossible to maintain the road.

Greene conceded at trial that the road shoulder was historically used to access the utilities. He admitted to turning away a fiber optic company's workers by telling them they were trespassing when they came to access the utility vaults behind his fence panels. Greene also refused Forsman's request to remove obstructions so concrete construction trucks could reach Forsman's property.

In late 2018, the Forsmans sent the Greenes a letter demanding the removal of the impediments interrupting the historical use of the road. When the Greenes refused, William Forsman took down the fence panels and gate himself.

In February 2019, the Forsmans filed a lawsuit against the Greenes seeking a prescriptive easement, express easement, easement by necessity, right of public easement and/or condemnation. The trial court judge visited the site, reviewed the court file and conducted a two-day trial. At least one survey was admitted at trial.[1]

At trial, Forsman's expert testified that the historic road was under the pit rock and current weeds and implied that Greene covered up the evidence of the normal lane of travel. The expert opined that the objects placed by Green, particularly fence sections, needed to be removed to maintain the road.

---

[1] There were two surveys marked as exhibits but it is not clear if exhibit 13 was admitted. Regardless, while the two surveys include slight differences, those variables fall within acceptable professional standards.

City of Asotin Fire Chief, Noel Hardin, testified that he observed Ridgeview Drive in 2019 and again in 2021. In 2019, Hardin did not order improvements to the road because he believed the road was "grandfathered in" at that time. Since then, Hardin opined that the road had been modified, rendering it currently eligible for the City to demand that it be made fire code compliant.

The trial court found the Forsmans had established a prescriptive easement for access and utilities. Specifically, the court found that various property owners in the plat had used the full width of Ridgeview Drive, including the shoulder, since at least 1992, and their use had been continuous, uninterrupted, open, and notorious. Additionally, the court found that the road was no longer exempt from compliance with the fire code.

## ANALYSIS

The first issue we address is whether the evidence is sufficient to support the trial court's findings that various property owners have used the full width of Ridgeview Drive, including the shoulder, since at least 1992, and that such use was not permissive. The Greenes contend that the evidence is insufficient to show uninterrupted use sufficient to put the Greenes on notice of prescriptive use. Instead, they argue that the evidence demonstrated that the residents usually drove down the middle of the roadway, within the 15-foot legal description, except on occasion when they were passing another vehicle or making a wide turn. The Greenes also challenge the trial court's findings that use of the shoulder was adverse and not permissive, arguing that the evidence failed to overcome

the presumption of permissive use as set forth in *Gamboa v. Clark*, 183 Wn.2d 38, 348

P.3d 1214 (2015).

To establish a prescriptive easement, a claimant must prove the use was (1)

adverse to the title owner, (2) open, notorious, continuous, and uninterrupted for 10 years,

and (3) the owner knew of the adverse use when he was able to enforce his rights. *Id.* at

43. If there is privity between successive occupants, the successive periods of adverse

use may be tacked onto each other to achieve the prescriptive period. *See Roy v.*

*Cunningham*, 46 Wn. App. 409, 413, 731 P.2d 526 (1986). If the elements of a

prescriptive easement are satisfied for 10 years, ownership of the easement automatically

vests. *See Gorman v. City of Woodinville*, 175 Wash.2d 68, 72, 74, 283 P.3d 1082 (2012)

(stating rule for adverse possession).

1. OPEN AND NOTORIOUS

The Greenes contend that the trial court's finding—that the property owners' use

of the entire width of Ridgeview Drive was open and notorious—is not supported by the

evidence. Instead, the Greenes argue that the testimony established, at most, occasional

and infrequent use insufficient to give the Greenes notice of a prescriptive claim. We

disagree.

Adversity is the use of land without the landowner's permission. *Gamboa*, 183

Wn.2d at 44. "Possession is adverse if a claimant uses property as if it were his own,

entirely disregards the claims of others, asks permission from nobody, and uses the

property under a claim of right." *Lee v. Lozier*, 88 Wn. App. 176, 182, 945 P.2d 214 (1997). "Whether use is adverse 'is to be measured by an objective standard; that is, by the objectively observable acts of the user and the rightful owner.'" *Tiller v. Lackey*, 6 Wn. App. 2d 470, 484, 431 P.3d 524 (2018).

The prescriptive use of property is open and notorious when a title owner has actual or constructive knowledge of the adverse use.

> "Open and notorious" should mean only that the use of another's land is not concealed and that it is reasonably discoverable by an owner, who is charged with seeing what is going on on his land. It should not mean that the owner has to have actual knowledge but only that a reasonably diligent owner who looked would discover the usage. In the case of surface uses, such as roads or above-ground utility lines, there should be no serious issue of notoriousness.

17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.7, at 101 (2d ed. 2004).

Here, the trial court found that the residents' use of the entire surface area of the roadway, beyond the 15-foot description, was open and notorious. This finding is supported by the evidence. George Cunningham testified that since at least the mid-1970s, before a formal easement was recorded, the contested area of Ridgeview Drive had been used by property owners and the public. The same use continued after the formal easement was recorded in the early 1990s and the Stanleys purchased the home that would eventually be purchased by the Forsmans. Cunningham testified that the

Stanleys, the Ritzes, and eventually the Forsmans used the entire surface area of the roadway. He testified that it was obvious from tire tracks and lack of vegetation that the residents of the plat drove on the entire width of the roadway. When shown a map of the easement, the roadway and the impediments placed by Greene, Cunningham verified that the map was an accurate depiction of the roadway surface as it had existed and had been used since the 1970s. When viewed in a light most favorable to the Forsmans, Cunningham's testimony is sufficient to support the court's finding that the property owners used the entire width of the roadway in a manner that was open and notorious.

2.    PRESUMPTION OF PERMISSIVE USE

Next, the Greenes assert that the trial court erred in failing to properly apply the presumption of permissive use as set forth in *Gamboa*.

*Gamboa* recognized and clarified the permissive presumption. Land use is presumed to be permissive "when someone enters onto another's land, the person 'does so with the true owner's permission and in subordination to the latter's title.'" *Gamboa*, 183 Wn.2d at 44 (quoting *Nw. Cities Gas Co. v. W. Fuel Co.*, 13 Wn.2d 75, 84, 123 P.2d 771 (1942)). The presumption is limited to three factual scenarios: (1) unenclosed land, (2) enclosed or developed land where it is reasonable to infer that the use was permitted by neighborly sufferance or acquiescence, or (3) the evidence demonstrates that the owner of the property created or maintained a road and his neighbor used the road in a noninterfering manner. The court discussed the policy supporting the presumption of

permissive use being that a landowner who quietly acquiesces should not lose his rights. The presumption incentivizes a courteous neighbor to allow neighbors to conveniently share use.

"The claimant may defeat the presumption of permissive use 'when the facts and circumstances are such as to show that the user was adverse and hostile to the rights of the owner, or that the owner has indicated by some act his admission that the claimant has a right of easement.'" *Id.* at 44-45 (quoting *Nw. Cities Gas Co.*, 13 Wn.2d at 87). Installation, use, and maintenance of a road are examples of use that is hostile to the rights of an owner. *Nw. Cities Gas Co.*, 13 Wn.2d at 90-91.

Here, the trial court found that the residents' use of the entire width of Ridgeview Drive was not permissive, and the presumption of permissive use recognized in *Gamboa* was either overcome or did not apply. While we agree that the evidence was sufficient to overcome the presumption, we disagree with the trial court's reasoning.

In its memorandum decision, the trial court determined that neighborly acquiescence in *Gamboa* did not apply because "there was nothing 'neighborly'" about Bud Greene's view of his land and his intentions to keep others off of his property. CP at 371. This comment demonstrates a misunderstanding of the presumption of permissive use.

Prescriptive rights are not obtained through permissive use of property. The question is not whether the Greenes were being neighborly, but whether the Forsmans and other residents were using the portion of Ridgeview Drive beyond the legal easement

11

with the permission of the land owner or adverse to their interests. By placing impediments and fencing along the disputed area, the Greenes were simply asserting their right to exclusive use of their property. *See Wood v. Nelson*, 57 Wn.2d 539, 540, 358 P.2d 312 (1961) ("A fence is the usual means relied upon to exclude strangers and establish the dominion and control characteristic of ownership."). In other words, placing the impediments to keep the Forsmans and others off the disputed land would have stopped the prescriptive period from continuing the run unless the Forsmans' prescriptive rights had already vested.

Despite the trial court's misapplication of the presumption of prescriptive use in its memorandum decision, the evidence supports the finding that the presumption was overcome in this case. In its formal findings and conclusions, the court concluded that in light of the "testimony presented at trial and the particular facts of this case, the precedent of *Gamboa . . .* does not establish permissive use of that portion within the line identified as 'Roadway Graveled Surface Area/Shoulder,' as shown on Exhibit 13." CP at 273-74. Substantial evidence supports this finding.[2]

---

[2] Whether use of property is permissive or adverse is established through evidence and is thus a finding of fact. *See Casterline v. Roberts*, 168 Wn. App 376, 382, 284 P.3d 743 (2012) ("[f]indings of fact are determinations of 'whether the evidence show[s] that something occurred or existed'") (quoting M*oulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978)). "A finding of fact erroneously described as a conclusion of law is reviewed as a finding of fact." *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

Here George Cunningham provided undisputed evidence that, since the early

1990s, the Stanleys, the Ritzes, and then the Forsmans had each used the entire width of

the roadway in an open manner without seeking or obtaining the permission of the

landowner. These property owners used and maintained the entire roadway as easement

owners, not as permissive users. This testimony establishes that the prescriptive

easement vested several years before the Greenes purchased their property. Once vested,

the Greenes could not take the prescriptive right away regardless of how many

impediments they placed on the disputed area of the roadway.

The trial court's finding that the Forsmans and their predecessors used the entire

portion of Ridgeview Drive in a manner adverse to the property owner and that was open,

notorious, and uninterrupted for more than ten years is supported by the evidence.

3.      INTERNATIONAL FIRE CODE AND ATTORNEY FEES

Finally, the Greenes assign error to the trial court's conclusion that Ridgeview

Drive is no longer exempt from the fire code requirements. In their briefing, the Greenes

acknowledge that the court did not hold that any specific provision of the code applied, or

that the code required any particular action on the part of the property or easement

owners. Nor do they suggest a remedy that this court can provide. Instead, they suggest

No. 38583-3-III
*Forsman, et al v. Greene, et al.*

that they are preserving the issue in the event that the case is remanded.  Since we are

affirming the trial court and not remanding, we decline to address this issue.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Pennell, J.

_____
Siddoway, C.J.