FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 DEC -3 AM 9: 23

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOSEPH WORKMAN, trustee, WCT
TRUST, a Washington trust,

          Appellant,

      v.

JERALD F. KLINKENBERG and
SANDRA LEE KLINKENBURG,[†]
husband and wife; and CITIBANK, or
its successors and/or assigns,

          Respondents.

No. 77105-1-I

DIVISION ONE

PUBLISHED OPINION

FILED: December 3, 2018

SMITH, J. — Where use of another's property begins as a neighborly accommodation, the party seeking a prescriptive easement must overcome the presumption that the use was permissive and must show when and how the use became adverse. Under Gamboa v. Clark, 183 Wn.2d 38, 348 P.3d 1214 (2015), in order to overcome the presumption of permissive use, a litigant must either demonstrate a use that was adverse and hostile to the rights of the opposing party or show that the opposing party indicated that an easement was granted. Because Joseph Workman[1] did not present evidence raising a genuine

---

[†] The true and correct spelling, "Klinkenberg," will be used in this opinion.
[1] We refer to each member of the Workman family by their first name to avoid confusion.

issue of material fact that either of these circumstances happened, summary judgment dismissal of his prescriptive easement claims was proper. Additionally, the trial court did not abuse its discretion in awarding the Klinkenbergs attorney fees. We affirm and also grant the Klinkenbergs their attorney fees on appeal.

## FACTS

In the late 1970s and early 1980s, Carolyn and Marvel (Marv) Workman, together with Clarence and Patricia Young, owned lot 129 of the Whidbey Shores development on Whidbey Island. In July 1982, the Workmans purchased the lot next door (lot 130) and sold their interest in lot 129 but continued to use a patio and stairway on lot 129 as guests of the Youngs. In 1990 and 1991, the Workmans transferred their interest in lot 130 to WCT Trust.

In 1992, David McClinton purchased lot 129 through a trust. McClinton and Marv were business partners and close friends. In about 1994, they agreed that the patio and stairway on lot 129, between their respective decks, would be a shared recreational space. Together, they paid for and built a brick patio, fire pit, and railroad tie stairs descending to the concrete bulkhead (the disputed area).

When McClinton decided to sell lot 129, Marv requested that he have a "first crack" at trying to find a friend to buy it "because of . . . the joint area" and in order to "kind of continue this open concept . . . between the two properties." Clerk's Papers (CP) at 359, 491.

In 1999, Marv's friends, Jill and Lydell Knudson, decided to buy lot 129 with their family, Jerald and Sandra Lee Klinkenberg. When the Klinkenbergs

bought lot 129, Lydell Knudson informed them "that the Workmans occasionally used the Lot 129 brick patio and fire pit, and asked whether [they] would permit that use to continue." CP at 817. They agreed to give the Workmans permission to use the area. In 2009, the Knudsons transferred their interest in lot 129 to the Klinkenbergs.

In 2013, Joseph, as trustee of WCT Trust, sent the Klinkenbergs a letter regarding the boundary and placement of a wooden planter box on the patio. In 2014, he sent another letter to the Klinkenbergs asking them to move the planter box "pending clarification of the property lines." CP at 842.

In 2015, Joseph, on behalf of the trust, filed a complaint in Island County Superior Court, alleging adverse possession, acquiescence, estoppel in pais, common grantor doctrine, and seeking adjustment of the boundary line. In October 2016, the Klinkenbergs moved for summary judgment to dismiss all four claims. Joseph amended his complaint to add claims for a prescriptive easement and easement by estoppel over the disputed area. At the hearing on summary judgment, the trial court summarily dismissed Joseph's claims on adverse possession (with the exception of a small area encompassed by a railroad tie planter), estoppel in pais, acquiescence, and the common grantor doctrine because there was no genuine issue of material fact that the Workmans' use of lot 129 was adverse rather than permissive. While not ruling on the added easement claims, the trial court did note that "it seems fairly obvious that these claims have no merit," especially in light of the Supreme Court's recent decision on prescriptive easements in Gamboa. Report of Proceedings (RP) (Nov. 10,

3

2016) at 42. In that case, the Supreme Court held that there was no prescriptive easement where a presumption of permissive use existed and the claimant did not rebut that presumption by demonstrating a use that was adverse and hostile to the rights of the owners or that the owners granted the claimants an easement. Gamboa, 183 Wn.2d at 52.

The Klinkenbergs, relying on Gamboa, moved for summary judgment, arguing that the Workmans' use of the disputed area was permissive in its inception and permitted as a neighborly accommodation. They further argued that the Workmans did not make a distinct and positive assertion of a right hostile to their rights and that they did not give the Workmans an easement.

In opposition to summary judgment, Joseph argued that the agreement between Marv and McClinton created "an area for joint or common use." CP at 450. In doing so, he cited McClinton's declaration, McClinton's deposition, and Andrew Workman's deposition. The trial court granted the Klinkenbergs' motion for summary judgment, explaining that "there is no evidence that any such agreement was intended to be a permanent, irrevocable right to use the disputed area." RP (Apr. 28, 2017) at 64.

Joseph moved for reconsideration, arguing that McClinton's testimony as to McClinton's agreement with Marv inferred that their agreement was intended to be permanent when viewed in the light most favorable to Joseph. In doing so, he cited a new declaration by McClinton that stated the "agreement was continuing and permanent" and that they "would never have invested the substantial amounts of money, time and effort to construct the patio, fire pit, and

4

stairs for an agreement for temporary use." CP at 195. On the Klinkenbergs' motion, the trial court struck this declaration because it was not newly discovered evidence. The trial court also denied Joseph's motion for reconsideration. In doing so, it entered a very detailed memorandum decision that outlined its evidentiary rulings and thoroughly explained its ultimate decision. The court concluded that "it would not be reasonable to construe McClinton's general reference to 'an agreement' with [Marv] Workman to use the disputed area as giving [Marv] Workman a permanent, irrevocable right to use the disputed area." CP at 160.

The Klinkenbergs then moved for an award of attorney fees and expenses. The trial court issued detailed findings and conclusions in support of its award of attorney fees, which totaled $131,749, and entered judgment in the same amount.

Joseph appeals.

## ANALYSIS

### Prescriptive Easement

Joseph argues that the trial court erred in concluding that there is no genuine issue of material fact whether a prescriptive easement exists over lot 129. We disagree.

We review summary judgment orders de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash.

Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (alteration in original) (quoting CR 56(c)). Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and he fails to make a factual showing sufficient to establish an element essential to his case, summary judgment is warranted. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Once the moving party shows there are no genuine issues of material fact, the nonmoving party must bring forth specific facts to rebut the moving party's contentions. Elcon Const., Inc., 174 Wn.2d at 169.

Additionally, we review a decision on reconsideration for abuse of discretion. In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). The trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons. King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV, 188 Wn.2d 618, 632, 398 P.3d 1093 (2017).

Prescriptive rights are not favored in the law because they necessarily work corresponding losses or forfeitures of the rights of other persons. Gamboa, 183 Wn.2d at 43 (citing Nw. Cities Gas Co. v. W. Fuel Co., 13 Wn.2d 75, 85, 123 P.2d 771 (1942)). "To establish a prescriptive easement, the person claiming the easement must use another person's land for a period of 10 years and show that (1) he or she used the land in an 'open' and 'notorious' manner, (2) the use was 'continuous' or 'uninterrupted,' (3) the use occurred over 'a uniform route,' (4) the use was 'adverse' to the landowner, and (5) the use occurred 'with the knowledge of such owner at a time when he was able in law to assert and

enforce his rights.'" Id. (citing Nw. Cities, 13 Wn.2d at 83, 85). "For a claimant to show that land use is 'adverse and hostile to the rights of the owner' in this context, the claimant must put forth evidence that he or she interfered with the owner's use of the land in some manner." Id. at 52 (citing Nw. Cities, 13 Wn.2d at 90-91). "The claimant bears the burden of proving the elements of a prescriptive easement." Id. at 43 (citing Nw. Cities, 13 Wn.2d at 84).

Here, the issue is whether or not the Workmans' use of the disputed area was adverse. "Permissive use is not adverse and does not commence the running of the prescriptive period." Lee v. Lozier, 88 Wn. App. 176, 182, 945 P.2d 214 (1997) (citing Washburn v. Esser, 9 Wn. App. 169, 171, 511 P.2d 1387 (1973)). There is "an initial presumption of permissive use to enclosed or developed land cases in which there is a reasonable inference of neighborly sufferance or acquiescence." Gamboa, 183 Wn.2d at 47. "What constitutes a reasonable inference of neighborly sufferance or acquiescence is a fairly low bar." Id. at 51. Where use is "'permissive in its inception,'" there is a presumption of permissive use that "'cannot ripen into a prescriptive right, no matter how long it may continue, unless there has been a distinct and positive assertion by the dominant owner of a right hostile to the owner of the servient estate.'" Id. at 45 (quoting Nw. Cities, 13 Wn.2d at 84).

Gamboa controls the outcome of this case. There, the Supreme Court considered whether claimants in a prescriptive easement case presented sufficient evidence to rebut the presumption of permissive use. There, a gravel road separated parcels of land owned by the Gamboas and the Clarks. Id. at 40.

For more than 10 years, the Gamboas used the gravel road, the majority of which was on the Clarks' property, to obtain access to their house and some of their farmland. Id. at 41. The Supreme Court held that the evidence supported a reasonable inference of neighborly sufferance or acquiescence because both parties used the road without any disputes for many years and each was aware of the other's use, but no one objected to it. Id. at 51. It also held that "the Gamboas failed to overcome the presumption of permissive use because they did not demonstrate a use that was adverse and hostile to the rights of the Clarks, and they did not demonstrate that the Clarks indicated that they had an easement." Id. at 52.

Here, Joseph did not provide evidence of a distinct and positive assertion of a hostile right. Rather, he argued that the agreement between Marv and McClinton to create "an area for joint or common use" raised a genuine issue of material fact that the McClintons gave the Workmans an easement. CP at 450. He presented several pieces of evidence supporting this theory. The first was testimony from McClinton's deposition in which McClinton stated:

> Marv and I talked about what to do with that area between the houses. And we ultimately came up with the brick idea. So we just split the cost, and he would work on it on the weekend, and then I might come up the next weekend or – so we just – we worked on it together.

CP at 408. He also explained that the "joint area" between the properties was "just common area" that both parties and their children used and there was "no specific division between our properties on that area." CP at 411. McClinton's declaration stated, in relevant part:

8

4. As I testified during my deposition, in the early 1990s Marv Workman and I agreed the area between our decks would be a shared recreational space or Common Area. Accordingly, we shared the cost to build a brick patio and fire pit.

5. Marv and I along with our kids and my brother built the patio and fire pit. We also built a set of railroad tie stairs descending down to the concrete bulkhead.

6. As we agreed both Marv and I used the Common Area. So did my kids and Marv's kids. I understand Marv's kids continue to use the Common Area to this day.

7. Also as agreed, both families worked to maintain the Common Area. This maintenance largely consisted of power washing, weeding, cleaning out the fire pit and the like.

8. When I decided to sell Lot 129, Marv requested that because of the agreed Common Area that I sell to one of our friends who would continue to honor the agreement.

CP at 387. Finally, Joseph presented testimony from the deposition of Andrew Workman. In that testimony, the Klinkenbergs' counsel asked Andrew whether he "had permission to use the patio as guests [of] Lot 129, including the fireplace?" CP at 420. He responded, "It's always been a common area. For years and years we always used the fire pit." Id. When asked whether lot 129 owners have "permission" to use the area on the Workmans' side, he responded, "Yeah." Id. Again, counsel asked whether he had "permission to use the part on 129" and he responded, "Dave McClinton when he – we used it as a common area with Dave McClinton. I haven't had any discussions with the Klinkenbergs." Id.

Based on this evidence, the trial court did not err in granting summary judgment because Joseph failed to present evidence to rebut the presumption of permissive use as required by Gamboa. The evidence presented by Joseph

9

does not raise a genuine issue of material fact that McClinton or the Klinkenbergs intended to give the Workmans a prescriptive easement over the disputed area. Nothing in the testimony cited above indicates that the "joint" or "common" use agreement was intended to be permanent. Therefore, summary judgment was proper and the trial court did not abuse its discretion by denying Joseph's motion for reconsideration.

Joseph argues that <u>Gamboa</u> is distinguishable because there is evidence that the Workmans provided consideration and no such evidence existed in <u>Gamboa</u>. But, while the presence of consideration can be relevant in a prescriptive easement case, it is not determinative. The real issue is whether Joseph provided evidence that the agreement granted his family a permanent right to use the disputed area, not whether there was consideration supporting that agreement. In <u>Gamboa</u>, a prescriptive easement was not warranted because there was no evidence that the Clarks granted the Gamboas a right of easement. <u>Gamboa</u>, 183 Wn.2d at 52. The same is true here. None of the evidence provided establishes that McClinton or the Klinkenbergs granted the Workmans a permanent right to use the disputed area.

Joseph relies on two pre-<u>Gamboa</u> Court of Appeals decisions to argue that consideration is determinative: <u>Lee</u> and <u>Washburn</u>. But in both <u>Lee</u> and <u>Washburn</u>, there was direct evidence that consideration was given in exchange for a right of easement. Because no evidence exists in this case that the agreement was for a permanent right to use the disputed area, the presence of consideration alone does not require reversal.

In Washburn, four neighbors shared the costs to construct a road through their properties to obtain access to a beach. 9 Wn. App. at 170. The trial court granted a prescriptive easement, finding that the original lot owners orally agreed to put in the road to provide beach access, shared in the cost of the road, and after the road was put in, used the road as a "'matter of right.'" Id. at 171-72 (emphasis omitted). On appeal, the court explained that the "important question is whether the landowner permitted the use as a mere revocable license or whether an oral grant of a permanent right to use the property was intended." Id. at 172. It held that, based on the testimony presented, "the original owners agreed upon and jointly constructed a roadway that was to benefit and burden each other's land. They were each to use the road as a matter of right. Consideration was established." Id. at 173.

In Lee, a group of neighbors equally divided the cost of building a community dock that was, in part, on property owned by William Fogleman. Lee, 88 Wn. App. at 179. Jon Lozier later purchased the property from Fogleman and began restricting community access to the portion of the dock on his property. Id. at 179-80. The neighbors sued, and at trial, one testified that during a homeowners' association meeting, Fogleman promised to write a "letter" that would appear on the title of his property, granting an easement for the neighbors to use the dock. Id. at 180. Another neighbor testified that when he asked Fogleman whether he had recorded the easement, Fogleman stated he had "'taken care of'" it "'a long time ago.'" Id. at 181. The trial court found that the elements of a prescriptive easement were met. Id. On appeal, the court held

11

that "Fogleman's promise of filing a 'letter' against his title indicated an intent to grant a permanent, irrevocable right to the neighbors to use the dock." Id. at 183. Additionally, citing Washburn, the court noted that the fact that the neighbors contributed to the cost of the dock also indicated that they were operating under a permanent right to use it. Id. at 184.

Here, unlike in Lee or Washburn, there is no evidence that McClinton agreed to grant a permanent right to the Workmans to use the disputed area. The fact that the Workmans shared the cost to construct and maintain the patio, in and of itself, is not evidence that a permanent agreement existed. In the absence of evidence indicating that a permanent right was granted, there is no genuine issue of material fact.

Joseph relies on McClinton's second declaration, filed after the motion for summary judgment was granted, to argue that a genuine issue of material fact existed whether the agreement was intended to be permanent. But, the trial court granted the Klinkenbergs' motion to strike this declaration because the testimony was not newly discovered evidence.[2] Although Joseph appealed the order denying his motion for reconsideration, he did not assign error to the court's decision to strike this declaration nor did he argue that the trial court abused its discretion in striking it. "Appellate courts will only review a claimed

---

[2] The court also noted that the new testimony was inadmissible because without personal knowledge, it speculates as to the motivations and desires of Marv. Furthermore, the court noted McClinton's testimony that there was an "agreement" between McClinton and Marv that contradicted McClinton's deposition testimony that "he did *not* have any sort of formal agreement with the Workmans regarding the use of the (so-called) joint area." CP at 150.

12

error that is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto and is supported by argument and citations to legal authority." Vern Sims Ford, Inc. v. Hagel, 42 Wn. App. 675, 683, 713 P.2d 736 (1986) (citing RAP 10.3(a)(5); 10.3(g); Bender v. Seattle, 99 Wn.2d 582, 599, 664 P.2d 492 (1983); Lassila v. Wenatchee, 89 Wn.2d 804, 809, 576 P.2d 54 (1978)). Because Joseph did not challenge the trial court's decision to strike the declaration, we will not consider it on appeal.[3]

Joseph also argues that summary judgment was not proper because his family's use of the property was "joint," not "permissive." This distinction, based on McClinton's testimony, does not resolve the key issue: whether that use was intended to be permanent or temporary. Because Joseph has not presented evidence that the agreement was permanent, this argument fails.

In his reply brief, Joseph argues that the Workmans used the term "permission" in their deposition testimony because they did not understand the legal implication of that term. Even so, it is likely that the Workmans understood the difference between a permanent right and a temporary right. None of the testimony cited by Joseph raises a genuine issue of material fact that the parties understood the agreement for joint use to be permanent.

For the first time on appeal, Joseph argues that he did assert a claim of right in accordance with Gamboa by sending two letters to the Klinkenbergs in 2015 asking them to remove their large planter from the disputed area. But,

_____

[3] Because we do not consider this declaration on appeal, we deny the Klinkenbergs' motion to strike references to it in Joseph's appellate briefing.

13

because this argument was not raised below, we do not consider it on appeal. RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

Finally, Joseph argues that the other elements of a prescriptive easement were met. But because he cannot show that there is a genuine issue of material fact as to the adverse use element, it is immaterial whether he presented evidence satisfying the other elements.

### Attorney Fees at the Trial Court

Joseph argues that the trial court abused its discretion in awarding the Klinkenbergs $131,749 in attorney fees. We disagree.

"The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity." Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). Whether a trial court is authorized to award attorney fees is a question of law, which we review de novo. Gander v. Yeager, 167 Wn. App. 638, 646, 282 P.3d 1100 (2012). When attorney fees are authorized, we will uphold an attorney fee award unless we find the trial court manifestly abused its discretion. Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). The trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons. King County, 188 Wn.2d at 632. The Supreme Court has held that the use of lodestar methodology is proper in the determination of a reasonable fee. Mahler v. Szucs, 135 Wn.2d 398, 434, 957 P.2d 632, 966 P.2d 305 (1998).

RCW 7.28.083(3) provides:

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

The statute uses the term "adverse possession," and this case involves both adverse possession and prescriptive easements. Because these doctrines "are often treated as equivalent[s]" and the elements required to establish adverse possession and prescriptive easements are the same, this statute allows recovery for fees incurred on prescriptive easement claims. Kunkel v. Fisher, 106 Wn. App. 599, 602-03, 23 P.3d 1128 (2001); accord 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.7, at 99 (2d ed. 2004).

Here, the trial court entered thorough findings of facts and conclusions of law regarding the Klinkenbergs' motion for attorney fees and expenses. It found that under RCW 7.28.083(3), the Klinkenbergs, as prevailing parties, were eligible for attorney fees on the adverse possession claim and its related legal theories that were dismissed in the first order on summary judgment. The trial court also found that they were entitled to fees for the easement claims that were dismissed in the second order on summary judgment because they were also the prevailing party on those claims. The court then applied the lodestar method for calculating attorney fees. First, it determined whether the hourly rates of each attorney and paralegal were reasonable. Some of the rates charged exceeded $400 per hour, and the court adjusted those down to $350, finding that rate to be

justified in the locality, given the attorneys' experience. It then reviewed a breakdown of the hours spent per attorney, per category and included that breakdown in its findings. Although the number of hours charged was significant, the trial court found that several reasons justified the additional time, including the number of depositions needed; the time required to respond to Joseph's discovery requests; the fact that Joseph moved to amend his complaint shortly before the first summary judgment motion so that a second separate motion for summary judgment was necessary; and the fact that the Klinkenbergs had to respond to Joseph's motions for reconsideration on both summary judgment orders. The trial court also found that Joseph failed to "identify a single billing entry . . . as excessive" or "argue that the number of hours expended in any particular category of work was unreasonable." CP at 1127. The court did delete claims for time spent unsuccessfully opposing Joseph's motion to amend his complaint (totaling $7,003), and it deducted the overall award by five percent "in light of the fact that [Joseph] prevailed on the minor issue of adverse possession of the small area occupied by the railroad tie planter box," which it found encompassed 22 feet of the over 310 foot boundary. CP at 1125, 1129. In total, the trial court awarded $118,481 in fees expended on the litigation and $13,268 in fees for the fee petition, for a total of $131,749. CP at 1129, 1132.

Although the total amount of fees awarded is high, the trial court did not abuse its discretion. The trial court properly calculated the lodestar, and its decision was based on carefully reasoned findings and included a substantial amount of detail.

Joseph argues that the award is excessive in comparison to the assessed value of the property of $428,503. In doing so, he relies on <u>Scott Fetzer Co. v. Weeks</u>, 122 Wn.2d 141, 859 P.2d 1210 (1993), where the Supreme Court held that an attorney fee award was unreasonable when "a total of 481.89 hours—the equivalent of almost 3 months of uninterrupted legal work by one attorney—was awarded, with no examination of the actual reasonableness of these hours." <u>Id.</u> at 152. But here, unlike <u>Scott Fetzer</u>, the trial court engaged in a very careful and well documented examination of the reasonableness of the hours claimed. Additionally, where <u>Scott Fetzer</u> involved "an uncomplicated dispute over 120 vacuum cleaners worth less than $20,000," this case involved six claims to waterfront property valued at more than $400,000 where the use at issue occurred over a period of more than 20 years. <u>Id.</u> at 156. The trial court found that had Joseph prevailed, "the Klinkenbergs would have lost seven feet of their fifty feet of water frontage, a substantial loss of valuable property." CP at 1120. <u>Scott Fetzer</u> is not controlling.

Joseph also argues that the trial court should have capped all attorney fees at a rate of $255 per hour, the rate as his expert testified was reasonable for the locality. In its findings, the trial court explained that, based on <u>Brown v. State Farm Fire & Casualty Co.</u>, 66 Wn. App. 273, 831 P.2d 1122 (1992), it could "'consider its own knowledge and experience concerning reasonable and proper fees, and . . . form an independent judgment either with or without the aid of testimony of witnesses as to value.'" CP at 1114 (quoting <u>Brown</u>, 66 Wn. App. at 283). The trial court was well within its discretion to find that $350 per hour was

justified in the locality for attorneys with the legal knowledge, education, and experience of the Klinkenbergs' attorneys.

Finally, Joseph argues that the trial court abused its discretion in awarding the Klinkenbergs attorney fees for defending the two easement claims on summary judgment because the trial court previously advised the parties that it believed Gamboa would be controlling on those claims. Regardless of whether the Klinkenbergs' attorneys knew what case would likely be controlling, they still had to spend time to draft and defend the motion for summary judgment. The trial court specifically found that "the time spent by defense counsel preparing and arguing the second summary judgment pleadings was reasonable." CP at 1126. Furthermore, the trial court explained that it did direct the parties to Gamboa during the first summary judgment hearing and Joseph "should have been on notice of the distinct possibility [he] may not prevail on the easement claims." CP at 1126. Although Joseph argues that the hours spent were not reasonable he does not take issue with any specific billing entry. Joseph has not demonstrated that the trial court abused its discretion in finding the amount of time spent on the second summary judgment motion was reasonable.

### Attorney Fees on Appeal

The Klinkenbergs request attorney fees on appeal under RAP 18.1 and RCW 7.28.083(3). Attorney fees may be awarded at the appellate level only when authorized by a contract, a statute, or a recognized ground of equity. Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 839, 100 P.3d 791 (2004). As described above, RCW 7.28.083(3) provides such a basis. Because the

18

Klinkenbergs are the prevailing party on appeal, we grant the Klinkenbergs their reasonable appellate attorney fees, subject to their compliance with RAP 18.1.

In conclusion, we affirm the dismissal of the prescriptive easement claims on summary judgment, affirm the trial court's award of attorney fees to the Klinkenbergs, and grant the Klinkenbergs their request for attorney fees on appeal.

_____
Smith, Jr.

WE CONCUR:

_____
Schindler, J.

_____
Becker, J.