IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JINRU BIAN, a single man, | No. 81937-2-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| OLGA SMIRNOVA and JOHN DOE SMIRNOVA, a married man and woman and their marital community, | |
| Respondent. | |

COBURN, J. — Jinru Bian seeks reversal of an order granting summary judgment to his neighbor, Olga Smirnova, terminating his claim of adverse possession. He also seeks reversal of an order granting her attorney fees and costs. Because Bian failed to rebut Smirnova's evidence defeating his adverse possession claim, we affirm the trial court granting Smirnova's motion for summary judgment. We reverse the order granting attorney fees and costs because the record does not establish that the trial court determined if the award was equitable and just. We remand to the trial court for determination of attorney fees and costs consistent with this opinion.

FACTS

Margaret Erhardt purchased her Bellingham property in 1992. At the time, her backyard was enclosed by a wood fence. She believed this fence

Citations and pin cites are based on the Westlaw online version of the cited material.

represented the property line between her and her neighbor to the south. In 2004, Smirnova and her former husband, Evgeny Kantor, purchased the property to the south of Erhardt's property (Smirnova Property).[1]

In 2007, Kantor purchased the Erhardt property. The parties do not dispute that the fence Erhardt describes as existing when she purchased her property was the same fence that existed when Kantor purchased the Erhardt property (Fence I).

Smirnova operated a residential licensed care facility from the homes on each of the properties and, according to her later declaration, made two changes in 2007. First, Smirnova demolished Fence I to create one large backyard to benefit the residents of her care facility. The original fence posts "were cut but not removed and stayed in the ground due to the heavy labor needed to remove them." Second, she created an easement between the two properties and built a ramp and a bridge so that wheelchair-bound residents could freely move between the residences and access the outdoors.

Also according to her later declaration, Smirnova erected another wood fence (Fence II) in 2009 to secure an area for a new puppy. This fence, which she described as temporary, was made from reused materials from another project. Faced with financial and health issues, Smirnova and Kantor decided to surrender to the bank the property that formerly belonged to Erhardt. Jinru Bian

---

[1] The record indicates that in 2004, Kantor was the sole purchaser of the property which was later given to Smirnova by way of a quitclaim deed in 2007. Because this transaction is not at issue, for clarity, we refer to the property as the "Smirnova Property."

purchased this property from the bank in October 2012 (Bian Property).

In 2016, the relationship between Bian and Smirnova deteriorated.[2] Smirnova commissioned a survey of her property in December 2016.  The survey showed the location of Fence II slightly south of the Smirnova Property's legal boundary with the Bian property.  It is this strip of land, about 10 inches,[3] between the platted property line and Fence II that is the subject of this dispute.  In 2017, Smirnova replaced Fence II with a new wood fence (Fence III).  Fence III was installed closer to the property line but could not be installed along the exact property line given that the original fence posts had "robust concrete footings" that were too laborious to remove.  The new fence was placed four inches from the platted property line inside the Smirnova Property.

## Summary Judgment Motions

In February 2020, Bian sued Smirnova in King County Superior Court to quiet title, claiming adverse possession for the property between the platted property line and where Fence II had stood.  He also claimed trespass, unjust enrichment, and injunctive relief.  Apparently, Bian initially brought suit in 2018, but after discovery through November of 2019, the matter was dismissed for, according to Smirnova, lack of prosecution.  We do not have any records associated with the 2018 matter.

Bian based his claim on the theory that Smirnova did not actually demolish

---

[2] The disputes, which are not issues in this appeal, involved cutting down an arborvitae and attempts to install a garden fence in the front of the properties.
[3] The 2016 survey indicates the distance between Fence II and the platted property line is 0.9 feet.

Fence I and replace it in 2009 with Fence II. Instead, Bian theorized that Smirnova's story was "fake" and that, in fact, Fence II was the same fence as Fence I. Thus, according to Bian's theory, the fence that Erhardt characterized as dividing the two properties during the time she owned the Bian Property was in place continuously from 1992, when Erhardt purchased the property, until 2017, when it was replaced with Fence III. Bian submitted a declaration from Erhardt explaining her use of the property and that she "always understood that the old wooden fence surrounding the back yard marked its boundaries," and she "did not know that the fence on the south side of our lot encompassed a sliver of land that is described in my neighbor's recorded deed." Bian also submitted a photograph he took of a corner of the backyard and fence when he first moved in before Fence II was replaced by Fence III. Smirnova submitted a photograph provided by Erhardt of the Bian Property's backyard during the time Erhardt owned it that depicted part of Fence I. Bian argued Erhardt's declaration and the photographs show that Fence I and Fence II are one and the same.

Bian moved for partial summary judgment on the adverse possession claim. Smirnova filed a cross-motion for summary judgment. The trial court denied Bian's motion for partial summary judgment and granted Smirnova's cross-motion for summary judgment. The trial court also denied Bian's motion for reconsideration.

<u>Attorney Fees Below</u>

In September 2020, Smirnova filed a motion for entry of judgment and award of attorney fees. Bian objected to the amount arguing that the fees related

to adverse possession needed to be segregated from the asserted claims for trespass, unjust enrichment, and Smirnova's claim that the merger doctrine applied. Bian also objected to fees associated with the dismissed 2018 action. Apparently, four hearings were held related to attorney fees.

At a hearing in November, the court granted Smirnova attorney fees and costs but directed the parties to work out the amount. We do not have the report of proceedings for the November hearing. Though the attorneys, after negotiations, appeared to have come to an agreement of $33,000 in fees and $187 in costs, Bian's counsel still needed to get approval from Bian. After not hearing back from counsel, Smirnova noted another hearing in February to enter judgment. Bian filed an objection and response and appeared pro se for the hearing. At the hearing, Bian, in addition to arguing the initial objections his attorney previously raised, stated that whatever the attorney fees the court decided to impose, they had to be "equitable and just." Smirnova argued that she negotiated in good faith and because she had to brief the motion for fees multiple times, she was requesting the original amount proposed.

The trial court granted Smirnova's request for $39,190.50 in attorney fees and $188.39 in costs. The trial court orally explained the amount requested was "reasonable" given the course of litigation. The written order explained Smirnova was "the prevailing party under RCW 7.28.083(3), and thereby entitled to an award of costs and reasonable attorney's fees."

Bian appeals the order granting Smirnova's cross-motion for summary judgment and the order denying the motion for reconsideration. Bian amended

the notice of appeal to include the order entering judgment and award of attorney fees and costs. Bian appears pro se on appeal.

## DISCUSSION

### Standard of Review

Summary judgment is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Neighbors v. King County, 15 Wn. App. 2d 71, 80, 479 P.3d 724 (2020); CR 56(c). We review a summary judgment order de novo. Neighbors, 15 Wn. App. 2d at 80. "Summary judgment is subject to a burden shifting scheme. 'After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.' " Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601-02, 200 P.3d 695 (2009) (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)).

Although we review facts and inferences in the light most favorable to the nonmoving party, "[o]nce there has been an initial showing of the absence of any genuine issue of material fact, the party opposing summary judgment must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues." Boyd v. Sunflower Props., LLC, 197 Wn. App. 137, 142-43, 389 P.3d 626 (2016).

### Adverse Possession Claim

Bian argues that the trial court erred by granting summary judgment to Smirnova because he claims there is a genuine issue of material fact as to

whether the fence Smirnova dismantled in 2017 (Fence II) was the same fence that was in place in 1992 (Fence I).  We disagree.

To prevail on an adverse possession claim, the claimant must show that possession of the property was exclusive, actual and uninterrupted, open and notorious, and hostile for an uninterrupted period of 10 years.  Ofuasia v. Smurr, 198 Wn. App. 133, 143, 392 P.3d 1148 (2017).  "When real property has been held by adverse possession for ten years, such possession ripens into an original title.  Title so acquired by the adverse possessor cannot be divested by acts other than those required where title was acquired by deed."  El Cerrito, Inc. v. Ryndak, 60 Wn.2d 847, 855, 376 P.2d 528 (1962).

Because Bian had not owned his property for the requisite 10 years, his adverse possession claim was entirely dependent on one fact: that the fence in existence when Bian purchased his property in 2012 was the same fence in place between 1992 and 2007 when Erhardt owned the property.  Thus, Bian must prove that Erhardt adversely possessed the strip of land.

As proof for this claim, Bian submitted a declaration from Erhardt that stated, when she moved onto the property in 1992,

> there was an old wooden fence, about 5.5 feet in height, surrounding the back yard on three sides. . . . We always understood that the old wooden fence surrounding the back yard marked its boundaries. During the entire time we lived there, we used and maintained the entire area within the old wooden fence. . . . This area was used and maintained exclusively by me; no one else maintained or used the back yard.

Bian concedes that part of the fence must have been taken down when Smirnova built the ramp in 2007 but maintains that the rest of the fence that existed when

he bought the property in 2012 was the same fence that Erhardt relied upon to designate her back yard for more than 10 years.  Because the 2016 survey shows that the fence Smirnova took down in 2017 was inside the Smirnova Property, Bian contends Erhardt adversely possessed the strip of land between that fence and the platted property line.

In response to Bian's motion for partial summary judgment and in support of her own summary judgment motion, Smirnova established that she has resided on the Smirnova Property since 2004 and ran a licensed care facility from her home and the Erhardt property when her former husband bought it in 2007 until it was surrendered to the bank in 2011.  She declared that she removed Fence I in 2007 to create an open back yard and put up Fence II in 2009 because of a new dog.  When she replaced Fence II with Fence III, the new fence could not be placed exactly on the actual platted property line because the original fence posts had "robust concrete footings" that were too laborious to remove.  Thus, Fence III is four inches inside the Smirnova Property and closer to the property line than Fence II, but Fence I as she understood it, was on the property line.  Smirnova also submitted a photo provided by Erhardt that showed Fence I during the time Erhardt resided on the Bian Property.

Smirnova established that because Fence II was not Fence I, Bian cannot prove Erhardt adversely possessed the strip of land based on the location of Fence II.

As the opposing party to Smirnova's cross-motion for summary judgment, he was required to respond with more than conclusory allegations and

8

speculative statements that Smirnova's explanation about the fences was "fabricated" and a "fake" story. He contends that Smirnova presents only "conclusory statements" and "self-serving" claims with "zero evidence." Bian fails to understand that Smirnova presents evidence based on personal knowledge because she lived on the Smirnova Property during the time in question. The evidence she presented in her declaration cannot be disregarded as simply conclusory statements because Bian chooses not to believe them. Cf. Mithoug v. Apollo Radio of Spokane, 128 Wn.2d 460, 463, 909 P.2d 291 (1996) (citing CR 56(e) and recognizing that trial courts should reject evidence when the court is presented with an affidavit not based on personal knowledge).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

CR 56(e).

Bian submitted multiple photos, including three photos of the fence that existed at the time he bought the property.[4] One photo is described as a Google

---

[4] Bian also submitted two before and after photos of the ramp area showing where there was no fence before the survey and where Smirnova installed a fence after the survey. The addition of the fence in the ramp area does not shed any light on where Fence I was located.

We do not consider a photo Bian refers to in his brief that was submitted with his pro se response and objection to the entry of the order for judgment and award. "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. "The purpose of this limitation is to effectuate the rule that the appellate court engages in the same inquiry as the trial court." Mithoug, 128 Wn.2d at 462.

Earth photo reportedly taken on April 30, 2009. It is an aerial photo from a far distance that depicts what appears to be shrubbery and trees in between the back yards of the two properties. Another photo shows Fence III and how it meets up with lattice surrounding the trunk of an ash tree. Another photo shows from a distance the top portion of a maple tree on the other side of the ramp near the east end of the property line. Three other photos show the fence that existed in his back yard after he bought the property and before it was removed and replaced with Fence III. One photo is taken from very far away and another is a close photo of a part of the fence where Bian had repaired it. The third photo is taken of the northwest corner of Bian's backyard as it was when he bought the property.

## A. Trees and Vegetation

Bian first contends that the locations of pine, ash, and maple trees prove it would have been "impossible" to have had Fence I located on the property line.

Bian first questions, without any support from an arborist, how Fence I could have existed given the size and location of the pine tree. As indicated by the photo of the pine, it is located on the Bian Property beyond the property line at the time of the survey in 2016. Logic follows that a younger pine would have been even further from the property line when Erhardt owned the property if the pine was present at that time.

Bian next argues, without any support, that it would have been "impossible" for Smirnova to plant the ash tree "beyond the 'original' fence"

because of its location. According to the survey, the ash tree was on the Smirnova Property six inches south of the property line but north of Fence II. Bian provided no evidence that the ash tree, which looks relatively young in 2016, existed 24 years earlier when Erhardt purchased the property in 1992, or nine years earlier when Erhardt sold her property to Smirnova's former husband. Bian also ignores Smirnova's explanation that there was no fence at the location between 2007 and 2009.

The maple tree was a demarcation of the property line according to Bian, who claims that Smirnova told him in 2013 the boundary of the property was the ramp to the maple tree. According to the survey, the maple tree sits south of the property line on the Smirnova Property. Smirnova's statement to Bian, does not establish that Fence I encroached onto the Smirnova Property.

 Bian next relies on the aerial Google Earth photo of the properties, the photo supplied by Erhardt of the northeast corner of the Bian Property when she lived there, and Bian's photo of the same northeast corner after he bought the property. Bian contends the photos prove that Fence II that encroached on the Smirnova Property was the same fence that existed when Erhardt owned the Bian Property, because 1) the width of the garden bed is the same, and 2) the same three "trees" appear in the same location relative to the fence in these photos.

The difference in distance between the property line and Fence II is 10.8 inches according to the survey. The photos do not establish that the vegetation, including garden beds, were the exact same width at the time the Erhardt photo

11

was taken and the time the Bian photo was taken. Again, Bian has no personal knowledge as to what happened to the properties, including garden beds, during the time Smirnova operated a care facility on the Bian Property and when the bank owned the property.

Bian next contends that these photos disprove Smirnova's claim that she removed Fence I to create an open backyard between the two properties. Bian argues that it is "unreasonable" to believe that Smirnova removed Fence I to create one large backyard because of the difference in slope between the two backyards and the existence of trees and vegetation. Smirnova's care facility served the elderly and disabled, and Bian claims the hill created by the different grade of the houses would make it difficult for them to climb. This argument is not persuasive.

The photos of trees and vegetation that Bian relies on do not rebut evidence that Fence II was erected in 2009, three years before Bian purchased his property.

B. Fence Style

Bian next contends that the Erhardt photo and the Bian photo of the northeast corner of the Bian Property prove that Fence II and Fence I are one and the same based on the style and construction of the fence.

Bian first argues that the fence style is the same in the photos and that the age of the pickets and posts were old, whereas Smirnova had to have at least used new posts when Fence II was constructed even if she claimed she used material from another project for the fence. First, the fences in the photos appear

to be a different color. It is unknown what effect may be caused by power washing, staining, or painting the wood over the years. Second, two fences can share the same style and not be the same fence.[5]

Bian next argues that Smirnova "fabricated" the story about Fence I because he had never seen any old cement footings in the four years he resided on the property. If the footings existed, he argues they would have been noted on the survey and appeared in the photos. Bian ignores Smirnova's explanation that after the posts were cut, what remained "stayed *in the ground* due to the heavy labor needed to remove them." (Emphasis added.) In fact, leaving them covered by the ground is consistent with Smirnova wanting to create one open backyard between the two properties. Also, the existing footings is the only explanation Smirnova gave as to why she erected Fence III four inches south of the property line.

Although we review facts and inferences in the light most favorable to the nonmoving party, Bian failed to produce specific facts to rebut Smirnova's evidence that the fence that encroached on Smirnova's property was erected in 2009 and removed in 2017. The trial court properly granted Smirnova's motion for summary judgment.[6]

---

[5] We do not consider Bian's argument raised for the first time on appeal that it "is impossible to build a 'temporary fence' with its ending post joining the other two fences as perfect as the three original fences were built." Generally parties cannot raise new arguments on appeal that were not brought before the trial court. Matter of Estate of Reugh, 10 Wn. App. 2d 20, 51, 447 P.3d 544 (2019).

[6] Because Bian cannot establish Erhardt adversely possessed the strip of land on Smirnova's property, we need not address Smirnova's argument that the doctrine of merger of title applied as an affirmative defense.

Attorney Fees and Costs

Bian argues that the trial court erred in awarding attorney fees and costs to Smirnova in the amount of $39,378.89.  In part, we agree.

"The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity."  Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).  We review the authorization of attorney fees as a question of law reviewed de novo.  Workman v. Klinkenberg, 6 Wn. App. 2d 291, 305, 430 P.3d 716 (2018).  "When attorney fees are authorized, we will uphold an attorney fee award unless we find the trial court manifestly abused its discretion."  Workman, 6 Wn. App. 2d at 305.  A trial court abuses its discretion where its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.  Id.

The trial court awarded Smirnova attorney fees and costs totaling $39,378.89 because she was the prevailing party under RCW 7.28.083(3).

RCW 7.28.083(3) provides:

The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

Trial courts should discount attorney fees for hours spent on "unsuccessful

---

Bian appealed the trial court's order denying his motion for reconsideration on the issue of summary judgment.  However, Bian fails to adequately present the issue for our review.  See Sprague v. Spokane Valley Fire Dep't, 189 Wn.2d 858, 876, 409 P.3d 160 (2018) (refusing to address petitioner's claims, where they did not brief the claims and cited no law establishing them).

claims, duplicated effort, or otherwise unproductive time." Berryman v. Metcalf, 177 Wn. App. 644, 662, 312 P.3d 745 (2013) (quoting Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983)).

Bian argues that Smirnova should not receive attorney fees for two reasons. First, the fees were duplicative in that they included entries related to the 2018 complaint that was dismissed and the 2020 complaint. Second, Smirnova prevailed on a claim under the doctrine of merger of titles, and therefore she did not have to defend against the four "elements of adverse possession." Lastly, Bian correctly argues that the trial court failed to determine if the award is equitable and just.

Based on the record before us, it appears the trial court, at a hearing on November 13, addressed the arguments presented by Bian's counsel as to the basis of attorney fees that he again argued pro se at the hearing on February 26. Though the record indicates there were four hearings related to fees, we only have the verbatim report of proceedings for the last hearing.[7] In response to Bian's objection, the trial court explained:

> I note that [Smirnova's counsel] has put together a very thorough history of his efforts, which I directed him to engage in, to work with [Bian's counsel] to come to an agreed order so that, you know, the order could be entered and a Motion For Reconsideration could be brought. And it looks to me like there was a lot of delay between November 13th and here we are today on the 26th of February.
> So, under the circumstances, I'm not here to reconsider the decision I made on November 13th. The question is are

[7] Procedural rules apply to both litigants who choose to proceed pro se and those who seek assistance of counsel. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (citing In re Marriage of Wherley, 34 Wn. App. 344, 349, 661, P.2d 155 (1983)).

15

[Smirnova's] attorneys' fees reasonable? And I have gone through his filings. He represented Ms. Smirnova to defend in an action that you initiated and I ruled in her favor. I know you don't agree with that, that's why your case is on appeal right now, but when that happens he had a right to come in and ask for attorneys' fees.

So, here is what I'm going to tell you, I've read through all of his filings, including all of the factual background for his efforts to try to come to an agreed order that could be entered so that a motion for reconsideration could be brought by you if that's what you choose to do. I think his request for attorneys' fees, given the course of this litigation, are reasonable. I think he has made a showing of that and for that reason I'm going to enter the order that he is presenting, that's going to be entered today, and what I would encourage you to do is if you decide to do so bring a Motion to Reconsider. But you have got to follow the court rule in doing that. I can't explain how you have to bring your case, unless [your counsel] is going to assist you in the future.

All right. That will be my decision in this case.

The court's written order stated Smirnova was entitled to "reasonable" attorney fees as the prevailing party under RCW 7.28.083(3). Bian did not file a motion for reconsideration as to the trial court's award of attorney fees.

Because we review de novo whether the authorization of attorney fees is proper as a question of law, the record is sufficient as to that issue. Smirnova prevailed in her motion for summary judgment against Bian's claim for adverse possession. The trial court properly granted the award under RCW 7.28.083(3).

However, trial courts must "independently decide" what constitutes reasonable attorney fees and not simply defer to the billing records of the prevailing party's attorney. Mayer v. City of Seattle, 102 Wn. App. 66, 79, 10 P.3d 408 (2000). "Trial courts must also create an adequate record for review of fee award decisions. Failure to create an adequate record will result in a remand of the award to the trial court to develop such a record." Mayer, 102 Wn. App. at 79 (internal citations omitted).

16

The record suggests that counsel for both parties reached a proposed agreement that Bian did not approve of. The record also indicates that Smirnova requested the original proposed amount plus some additional hours for the last hearing. Thus, the record is unclear whether the amount awarded was based on the fact Bian would not sign off on the proposed agreed amount, which is his right, or if the requested higher original proposed amount was awarded because it was equitable and just.

Because the record fails to establish that the trial court determined the award was equitable and just, as required by RCW 7.28.083(3), we reverse the award of attorney fees and remand to the trial court to independently determine if the amount Smirnova requested was equitable and just.

Both parties ask for attorney fees on appeal. Bian asks for attorney fees under RAP 14.2, 14.3, 18.1 and RCW 7.28.083. Smirnova asks for fees under RCW 7.28.083(3). Because both parties prevailed in part, we decline to award attorney fees on appeal.

CONCLUSION

We affirm in part and reverse in part. We remand to the trial court for determination of attorney fees consistent with this opinion.

Coburn, J.

WE CONCUR:

Chun, J.

Verellen, J.

17